## LANE v. ROTH.

(Circuit Court of Appeals. Third Circuit. April 24, 1912.)

### No. 15 (1,597.)

1. MASTER AND SERVANT (§ 332*)—EXISTENCE OF RELATION—JURY QUESTION.
  Whether a chauffeur was acting for the owner of an automobile or for a company which was repairing it, when he negligently drove the car against plaintiff, *held*, under the evidence, a jury question.
  [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–1277; Dec. Dig. § 332.*]

2. Master and Servant (§ 332*)—Existence of Relation—Jury Question.

An issue as to the existence of the relation of master and servant between defendant and one for whose negligence it is sought to charge him should be taken from the jury only when the evidence is clear and unequivocal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–1277; Dec. Dig. § 332.*]

In Error to the District Court of the United States for the District of New Jersey.

Action by Augusta M. Roth against Charles E. Lane. Judgment for defendant, and plaintiff brings error. Affirmed.

R. H. Locke, of Philadelphia, Pa., for plaintiff in error.

Jerome J. Rothschild, of Philadelphia, Pa. (Malcolm G. Buchanan, Thompson & Smathers, and Fox & Rothschild, on the brief), for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

GRAY, Circuit Judge. [1, 2] Charles E. Lane, of Camden, New Jersey, the plaintiff in error and defendant below, was the owner of an automobile truck, used by him for his butter, cheese and egg business. George Sawyer was his chauffeur and employé on the day of the injury hereinafter described, and for a long time prior thereto, as well as subsequently up to the time of the trial. His duty was to run the car, deliver provisions, and act as salesman and collect moneys. The truck had been bought by Lane from the Autocar Company, in Philadelphia, and had been sent over to that company's shop for repairs. Lane, being in a hurry to get it back, testifies that he telephoned the company and had received word from them that the car would be delivered on the day here in question, at the Market Street Ferry, just opposite Camden, across the Delaware river. He told Sawyer to go get the car at the said ferry, where, on other occasions, the Autocar Company had delivered it. Sawyer went to get the car, but did not find it at the ferry, and as he needed it for Lane's business, he went to the Autocar Company's repair shop for it. As he had no license to run a car in Philadelphia, he took along one of the company's employés, who had the company's dealer's license, which was attached to the car, there being no other Pennsylvania license tag thereon. On the way to the ferry, the machine got out of order and stopped, whereupon the employé who was accompanying Sawyer, telephoned to the repair shop and a mechanic was sent to the car with no definite instructions, having simply been told that the car had broken down and needed fixing. The mechanic patched up the car but was unable to properly repair it, and "advised," "told," or "ordered" Sawyer to take the car back to the shop. Sawyer says that he did so of his own volition, as the representative of Lane and in his interest. There was no change in the possession or control of the car. Sawyer still drove it, while the mechanic sat on the other

employé's lap, alongside of Sawyer, to listen to the working of the engine. Sawyer drove it so negligently and at such speed, upon the wrong side of the street, as to injure Mrs. Roth, the plaintiff below and defendant in error. Suit was accordingly brought by her against Lane, as the owner of the car and whose servant Sawyer was alleged to be at the time of the accident.

At the trial and after the evidence was all in, counsel for defendant, Lane, requested the trial judge to instruct the jury that on all the evidence they should find for the defendant. This request the court refused, and various other requests for specific instructions, as to various phases of the case, were made, but they all amounted to requests of peremptory instructions to find for the defendant. The assignments of error were founded upon the refusal of such requests, save one, which was founded upon the refusal of the court to charge that George Sawyer was illegally driving the said auto truck, as he had no license to do so, as required by the laws of the state of Pennsylvania. We think the question raised by this last-mentioned assignment is without bearing upon the determining points in the case. The single question, therefore, presented for our consideration is, whether on all the evidence as disclosed by this record, the trial judge should, as a matter of law, have instructed the jury to find for the defendant. The liability of the defendant, of course, turned upon its being determined whether Sawyer, who was running the auto truck at the time of the accident, was doing so as the servant of his general employer, Lane, or as the servant of the Autocar Company, to whose shops it was being taken for repairs under the circumstances above stated.

It can hardly be said that the testimony was conflicting, but it was colored, doubtless, by the viewpoint of the several witnesses for the plaintiff and defendant respectively. As a matter of fact, it seems entirely probable that, without regard to the relation of Sawyer as a servant to either party, while running the car from the Autocar Company's shops to the place where the car broke down, neither Sawyer nor the two employés of the Autocar Company gave any thought to what relation Sawyer stood in to either party in running the car back to the shops. He undoubtedly had the general control and management of the car for the defendant, Lane. He undoubtedly went to Market Street ferry as Lane's servant and in Lane's interest, and in the same service and interest he went, upon not finding the car at the ferry, to the shops of the Autocar Company, either to get the car himself and run it to the ferry, or to hurry them up in the repairs.

It may well be that in taking the car back to the shop from which he took it, for repairs, he was acting in the general interest of his master, the defendant below. There is no evidence, however, that there was any definite understanding between the defendant, Lane, and the Autocar Company, as to whose servant he was when he ran the car back to the repair shop. Sawyer himself has no definite opinion on this somewhat technical question, but there is evidence tending to show that he considered himself as acting for his general master, the defendant. The question is a close one, but we are constrained to believe that it was for the jury to determine it as one of fact, whether Sawyer, at the time of the accident, was acting as servant of

the defendant or of the Autocar Company. A court is not justified in taking such a question from the jury, unless the evidence in regard to it is very clear and unequivocal. Where the facts are in dispute, or more than one inference can be drawn therefrom, the question, whether the servant acted within the scope of his employment, is for the jury. The plaintiff in error, in his interesting and exhaustive brief, cites many cases touching the general question here involved. We do not think, however, that a discussion of these or of the cases cited by the defendant in error would serve any useful purpose. There is no difficulty as to the law applicable to the varying circumstances of these cases, or to the facts of the present case. This law has been clearly stated by the learned judge of the court below, in submitting the case to the jury, as follows:

"The first question for your consideration is whether the chauffeur, Mr. Sawyer, was, at the time and place of the accident, the servant of the defendant, and acting within the scope of his employment. In order that you should find that, you must find that at that time there must have existed between the chauffeur, Sawyer, and the defendant, in respect of the very transaction out of which the injury to the plaintiff arose, the relationship of master and servant. And you may also understand the law to be this: That a servant employed and paid by one person may, nevertheless, be ad hoc—that is, the servant of another in the particular transaction—even when his general employer is interested in the work. Now, gentlemen, do you get that? The relationship of master and servant must exist at the very time and place of the injury complained of, and that one person—that is, in this case, Sawyer—might be the servant of another in that particular transaction, even though his general employer was interested in the work. I am giving you that from a well considered case, as a matter of law. Then it will be for you to determine whether or not Sawyer was acting for the defendant at the very time and place of this transaction, as his servant, and you may determine that he was, irrespective of the fact that his master, the defendant, instructed him to get the machine at the ferry, provided you find that after that he was still acting within the scope of his employment. If he was acting for the automobile repair company at that time and place, then the defendant is not liable. That is a question of fact for you to determine under the evidence, for whom at the very time and place of the transaction—when the injury arose—he was acting."

As no other errors than those above referred to have been assigned, the judgment below must be affirmed, and it is so ordered.