[No. 31282.   Department Two.   October 30, 1950.]

HELEN HANKS, *Individually and as Executrix, Respondent,*
v. E. J. LANDERT *et al., Appellants.*[1]

[1]Reported in 223 P. (2d) 443.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frederick V. Betts,* for appellants.

*Kern & Dano,* for respondent.

ROBINSON, J.—This is an action brought by Helen Hanks, individually, and as executrix of the estate of Willis Hanks, for damages for the alleged wrongful death of Willis Hanks, arising out of a collision which occurred on March 19, 1948. The facts of the case are as follows:

On the day in question, James Mallum, a young man nineteen years of age, was driving his Chevrolet coupe from Ellensburg toward Snoqualmie Pass. It had been snowing intermittently. The road was covered with a layer of snow and ice, and was very slippery. Mallum had had no experience in driving under such conditions, and, when his car unexpectedly skidded and turned completely around, he stopped and flagged a wrecker belonging to, and operated by, appellant Landert. Mallum asked Landert to tow him over the summit, and Landert, who had been using his vehicle to assist stalled cars, agreed to do so. Landert connected the wrecker to the Chevrolet with a chain, leaving a gap between the vehicles of from four to five feet, according to the testimony of some witnesses, and of twelve feet, according to the testimony of one other. Mallum remained in his car, and Landert told him to keep it out of gear while it was being towed. Mallum testified that: "I believe he told me to keep my motor off," but Landert did not recall making any such statement. It was agreed that, if for any reason Mallum wished to stop, he would blow his horn. In this manner, Landert and Mallum proceeded toward the summit.

Meanwhile, respondent was driving eastward in her automobile, with her husband as a passenger. She rounded a curve and came in sight of the wrecker coming towards her. She testified that she was on her own side of the road, but that the wrecker was on her side also; that she blew her horn, put on her brakes and drove her car over to the right as far as she could; that the wrecker then pulled to its side of the road, and that she cleared it successfully; but

that the towed car remained in her lane of traffic. Landert and Mallum agreed that the Hanks car was on its own side of the road, but their testimony was to the effect that the wrecker and tow were likewise on their proper side, and Mallum testified that, after the Hanks car had cleared the wrecker, it "slid down" and collided with his Chevrolet. In any event, the left front end of the Hanks car struck the left front end of the towed car. As neither car was going very fast, damage to the vehicles was not extensive. However, Mrs. Hanks' husband had been suffering from an apparently incurable disease, called multiple myolema, described by his doctor as "in reality a cancer of the bone," which, the testimony indicated, causes a progressive degeneration of the bones, rendering them more brittle than normal. The doctor testified that, prior to the accident, Mr. Hanks' condition had somewhat improved, but the collision fractured both his legs and gave him a severe shock. These injuries, according to the doctor, reactivated the disease and ultimately resulted in his death in June, 1948. The doctor stated that, although it was impossible to make an accurate estimate, Mr. Hanks would normally have been expected to have lived from two to five more years had the accident not taken place.

The complaint alleged that Landert had been negligent in six respects: (1) In driving his vehicle and towing another vehicle in a reckless manner and at an excessive speed under the then existing weather conditions; (2) in failing to operate the wrecker in a careful and prudent manner and in operating it carelessly and heedlessly in wanton disregard for the rights and safety of others; (3) in failing to keep a proper lookout for other automobiles; (4) in failing to use proper towing equipment between the wrecker and the towed car; (5) in towing the Chevrolet with a tow chain which was too long for the existing highway and weather conditions, and at an excessive rate of speed, causing it to "whip, weave, oscillate and swerve across the center line of said highway, and from one side of the said highway to the other," to such an extent that Landert was unable to control the movements of the Chev-

rolet on the highway; and (6) in failing to tow the Chevrolet to the right of the center line of the highway and in driving it over to the left hand side of the highway. The cause was heard before a jury which found in favor of the defendant Landert. Plaintiff moved for a new trial, which motion was granted by the court. Defendants have appealed.

The court granted the motion for a new trial because it became convinced that two of its instructions had been erroneous. Instruction No. 25 read as follows:

"You are instructed that if you believe from a clear preponderance of the evidence that the accident herein complained of resulted solely from the negligence, if any, of the driver of the car being towed, then you shall find in favor of the defendants."

Respondent contends that this instruction concerned a matter not within the issues of the case. It is true that the pleadings contained no allegation of negligence on the part of Mallum, but the evidence was replete with indications that the accident could have been caused by him. One of respondent's own witnesses, a garage mechanic, in comparing two methods of towing a vehicle, testified as follows:

"A. The difference is, when you have the car hoisted up, the man in the wrecker has complete control of the car behind. When he has it on a chain he is at the mercy of the man in the car."

Of course, this testimony was brought out in connection with the allegation that Landert had been negligent in selecting an improper method of towing, but the question as to that was submitted to the jury under proper instructions; and the only importance of the testimony here is the indication that the driver of an automobile being towed, in the manner employed here, has some measure of independent control over it. There was also testimony by a truck driver, who, prior to the accident, had followed the wrecker for some distance, to the effect that the towed car, but not the wrecker, was weaving back and forth as it proceeded along the road. This witness testified that the driver of the wrecker "was handling [it] all right, as far as I know."

There was still further testimony, elicited by respondent herself, concerning whether Mallum had kept a proper lookout before the collision, and respondent attempted to show that, immediately after the collision, Mallum had gone to respondent's car, apologized, and stated, "I didn't see a thing."

All of this evidence raised an issue concerning the question of Mallum's negligence; and error cannot be predicated upon the giving of instructions outside the issues, as made by the complaint and answer, where they are based on evidence admitted without objection as if on sufficient pleadings. *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170.

Respondent also objects that instruction No. 25 left out of consideration any question of Landert's negligence. However, that matter was adequately covered in the court's other instructions. The principal vice which respondent finds in instruction No. 25, and the feature which was largely responsible for the decision of the trial court that it had been in error in giving it, is the suggestion expressed therein that, if the accident was caused solely by Mallum's negligence, appellant Landert could not be held liable. The trial court's reversal of its original position, that this view was correct, appears to be based, in large part, upon the case of *Cowley v. Bolander,* 120 Ohio St. 553, 166 N. E. 677. In that case, in a very similar situation, an instruction resembling that given in the present case was held to amount to reversible error, on the ground that a master-servant relationship existed between the concern towing the car and the owner, whom an employee of the concern had asked to assist in guiding the car while it was being towed. The court held the concern liable for the negligence of anyone whom its employee procured to aid him in the discharge of his duties. We may note that there appear to be minor variations in the factual background of the Ohio case and that at bar—thus, the Ohio court stated that there was evidence that the driver of the towing vehicle "took full charge of the operation and assumed responsibility therefor," and there was no such evidence, beyond possible

inferences, in this case. However, we will not attempt to distinguish the two cases in close detail, but will merely endeavor to show that, whatever the circumstances may have been in *Cowley v. Bolander,* the situation here presented fully warranted the instruction as it was given.

The propriety of the instruction, of course, must depend upon the nature of the relationship obtaining between Mallum and Landert. In its memorandum decision, the trial court has lucidly set forth its reasoning on the matter as follows:

"In the present case, the defendant driver had been employed, perhaps as an independent contractor, to haul the Chevrolet car from the place it skidded off the road to the summit of the Cascade Mountains at Snoqualmie Pass and he was to be paid for these services. Therefore, he became an independent contractor to do a certain job. In undertaking this work he was required to exercise due care in proportion to the circumstances and hazards, including not only the methods used in attaching the car to the truck but also the method used in keeping the car on the highway. He could have put one of his own employees in charge of steering the car or he could have had the driver of the car do this. He chose the latter method and thereby Mallum, the driver of the Chevrolet, became his servant."

The first question which presents itself is whether, when Landert took over the job of towing the Chevrolet, the relationship which thereby arose between Mallum and him was, as appellants contend in their brief, that of master and servant, or, as the trial court concluded, that of contractee and independent contractor.

An independent contractor is one who represents the will of the employer only as to the result of his work, and not as to the means by which it is to be accomplished. Moll, Independent Contractors' and Employers' Liability, 26, § 16. In the present instance, Landert, who was operating his own business, had control of the towing equipment, and it was a matter of his discretion as to how it was to be used. Had Landert been negligent in the performance of his duty in towing the Chevrolet, it is quite clear that Mallum could not have been held for such negligence, as

would have been the case had he been Mallum's servant. It is apparent, therefore, that the court was correct in concluding that Landert was functioning at the time of the accident as an independent contractor. See *Johnson v. Selindh,* 221 Iowa 378, 265 N. W. 622, 39 NCCA 289.

But Mallum's status, as driver of the towed vehicle, is more difficult of analysis. At first glance, it might well seem that he was indeed acting as the "servant" of Landert, engaged in assisting him in the carrying out of his duties in towing the Chevrolet. But it is important not to lose sight of the fact that, in the first instance, it was Mallum who obtained Landert's aid in getting his vehicle over the summit. Landert contributed his wrecker and his services to the project which was nevertheless, in essence, Mallum's. Mallum remained in his car, and, to some extent, in control of it. It is true that Landert gave certain instructions to Mallum, but these did not relate to the manner in which he should guide the car, but, rather, to the maintenance of effective liaison between the truck and the towed automobile as they proceeded together along the highway.

The doctrine of *respondeat superior* upon which Landert's liability for Mallum's negligence would have to be based, rests upon the proposition that, in doing the acts out of which the charge of negligence arises, the servant was representing his master at the time, and engaged in his business. *Hall v. Puente Oil Co.,* 47 Cal. App. 611, 191 Pac. 39. Obviously, it has no application where the alleged servant is acting for himself. It would seem that Landert was an independent contractor with respect to his function, that of towing the car, and that Mallum was equally independent with respect to his; that Mallum was not representing Landert, or anyone else save himself, and that, in consequence, he and he alone should be responsible for his own negligent acts.

In this connection, the parties have referred us to a number of cases involving tugs and tows. The trial judge did not consider these cases in point, for the reason, as he expressed it, that:

"The relations of a tug boat and a towed boat on one hand and a truck and a towed vehicle on another are greatly different because the operator of a towed vehicle usually has very little control over the car which he is steering, particularly in a case like this one in which the towed car was connected so close with the hauling car. A tug, however, usually tows a towed boat by means of a long cable, leaving considerable latitude on the part of the steersman of the towed craft in directing the course of the towed craft. Consequently, the steersman of the towed craft is more completely the master of the boat than is the driver of a towed automobile."

Undoubtedly, there is force in this argument, and there might well be cases where the evidence indicated that the driver of a towed automobile had no control whatever over his vehicle. This, however, does not appear to be such a case. Here, as we have seen, there was evidence from which the jury could have found that Mallum did exercise a certain amount of control over the operation of the Chevrolet, and that the accident would not have occurred except for his negligent conduct; and, this being true, much of the reasoning in the tug boat cases would seem to be applicable. See *Honeywell v. Mikelson,* 144 Wash. 513, 258 Pac. 36. In these cases, it appears to be generally held that, in the ordinary situation at least, neither the tug nor the tow is responsible for the independent negligence of the other. 15 C. J. S. 63, Collision, § 72. In *Grays Harbor County v. The Brimanger,* 171 Wash. 396, 18 P. (2d) 25, the following language was used:

"As above stated, the responsibility for damage, as between tug and tow, depends largely upon the peculiar circumstances of each case. This question generally arises as between the tug and the tow, but, of course, the books contain many cases in which the question arose, as here, between tug and tow on the one part and an entirely innocent bystander on the other. The question usually turns upon the matter of dominance of mind, depending upon whether the tug exercised complete control or whether that, or co-ordinate, authority was exercised from the tow.
" 'If the tow is towing at the end of a hawser, the liability would be upon the tug if the tow steered properly,

and would be upon the tow if the proximate cause of the collision was wild steering on her part. Even if she was steering properly, and the tug steered her into danger, she would be responsible to the injured vessel if by changing her helm or taking any other reasonable precautions she could avoid the consequences of the tug's negligence, for it would be her duty to avoid collision if she could do so.' Hughes on Admiralty (2d ed.), p. 129."

That it is proper to take an analogous view of the case at bar is suggested by *Farrar v. Whipple*, 65 Cal. App. 123, 223 Pac. 80. In that case, it was held that, where injuries were caused solely by the negligent manner in which the driver of the towed car steered his vehicle, the driver of the towing car could not be held responsible. The case is clearer, no doubt, than is this, for it appeared that the towing there being done was gratuitous, and there could be no basis for an argument that the owner-driver of the towed car was acting in pursuance of the business of the driver of the towing car, and was consequently his servant. Nevertheless, the fact that Mallum in this case paid Landert to assist him in his difficulty did not render the project of getting the car over the summit any the less his, nor did it, in itself, render the towing any less a joint operation than it was in the *Whipple* case. Respondent argues that the *Whipple* case is inapplicable because the court there stated that it was apparent from the record that it was the negligence of the towed car alone which caused the accident; and she urges that there is a great deal of evidence in the present case tending to show that Landert, the driver of the towing car, was negligent. But by the terms of the instruction itself, the jury was not to apply it unless it found that the accident was caused *solely* by Mallum, and the situation consequently parallel to that in the *Whipple* case.

We are, therefore, of the opinion that, under all of the circumstances of the present case, instruction No. 25 was properly given.

The court also held that its instruction No. 24 had been improper. This instruction reads as follows:

"You are instructed that the defendant in operating his tow truck had a right to assume that the driver of the chev-

rolet coupe which he was towing would so steer and operate his car as to remain on his right side of the highway in question and the defendant had a right to assume said fact until he knew or by the exercise of ordinary care should have known to the contrary."

As appellants have asserted, this instruction merely states a general rule of law. If it had been conclusively shown either that the driver of the towed car had no control over his vehicle, or that a true master-servant relationship existed between Landert and Mallum, the giving of this instruction might have been error. But where the project is in the nature of a joint operation, with both parties acting independently, as, in our view, was the case here, the instruction would seem to be an appropriate one.

The instructions as given by the court having been correct, the order granting respondent's motion for a new trial is reversed and the cause remanded, with instructions to render judgment in accordance with the verdict of the jury.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.

December 22, 1950. Petition for rehearing denied.