KENNETH L. KOHLER, appellee, v. JOSEPH SHEFFERT, dba SHEFFERT'S GARAGE, appellant, and ELLEN CONAWAY, defendant.

No. 49703

(Reported in 96 N.W.2d 911)

900

June 9, 1959.

Clewell, Cooney & Fuerste, of Dubuque, for appellant.

O'Connor, Thomas, McDermott & Wright, of Dubuque, and Hallagan, Irish & Burt, of Des Moines, for defendant.

F. H. Becker, of Dubuque, and Kintzinger & Kintzinger, of Dubuque, for appellee.

OLIVER, J.—This case involves an automobile collision in the intersection of Locust Street, a through street, and West Third Street, in Dubuque, Iowa, June 5, 1956, at 8:19 p. m. Both streets were paved. Plaintiff was driving his automobile north on Locust Street, across this intersection, when a non-operating Ford automobile owned by Paul E. Conaway, ran, out of control, down a long hill on West Third Street, through a stop sign and into plaintiff's car, injuring plaintiff and damaging his automobile. Thereafter plaintiff instituted this action for damages, naming as defendants Joseph Sheffert, doing business as Sheffert's Garage, who started the Ford down the hill, and Ellen Conaway, who occupied the driver's seat.

Trial to a jury resulted in judgment for plaintiff against both defendants. From this judgment defendant Sheffert, only, has appealed. He assigns error to orders overruling his motions for directed verdict and for judgment notwithstanding verdict and his exceptions to instructions.

There is little dispute in the record. However, in determining the sufficiency of the evidence to require submission of the case to the jury, it will be considered in the light most favorable to plaintiff. Some time prior to the accident Mr. Conaway and others had been working on the engine of his 1941 Ford at a high school in a course in mechanics. Early in 1956 he joined the Marine Corps and left Dubuque. His wife, defendant Ellen Conaway, remained in Dubuque. In April an instructor returned the automobile from the school and parked it across the street from the Conaway apartment. He testified it was not working properly but the brakes were then working and he did not examine them. Mrs. Conaway was a licensed automobile driver with little experience. She engaged someone to move the Ford and park it directly in front of her apartment, placed a block behind a wheel and left it standing there, unused.

Subsequently Mr. Conaway planned to return. Mrs. Conaway telephoned appellant, Sheffert, about the car. She told him the starter would not turn the motor over, and engaged him to tow it to his automobile repair garage, check it over, and work on it if there was anything to be done. After a number of calls, appellant came to her apartment early in the evening of June 5, without his tow truck, which he explained was not then available, and without a helper. She handed him the keys to the Ford. He opened the door and pushed the starter button. The motor did not turn over. He tried the gearshift which was on the steering wheel. He did not check the brakes, although he knew the car had not been operated for two or three weeks.

He then told Mrs. Conaway he wanted to push the car to get it started and "if she put the car in high gear and held the clutch in until I got the car up to about 15 miles an hour and released the clutch, that the car would start." She told him she had never done that and did not like the idea. However, she got into the Ford and "did as he said." He put the car in high gear and instructed her to turn the ignition on. With his car he pushed the Ford west one and one-half blocks to Burch Street, where it stopped of its own accord, apparently when appellant's car stopped pushing it. Appellant testified: "Then I decided to push her over Burch Street." He directed her to steer the Ford around the corner to the left and they traveled one block south on Burch Street down a slight slope to West Third Street where the two cars again stopped. Appellant had pushed the Ford at a speed up to ten or fifteen miles per hour and Mrs. Conaway had engaged the clutch a number of times but the motor had not started. She had not tried to apply the brakes.

Appellant testified: "She got in the car and steered it and did what I told her, at least up to West Third and Burch Street. I directed her as to what gear to put the car in and directed her to steer the car and how to steer it."

As the Ford stood on Burch Street at the entrance to its intersection with West Third Street, appellant shouted to Mrs. Conaway to turn the corner to the left and park and he would take it from there. He testified he intended to take her home and pick up the Ford later. His car then pushed the Ford into

the downsloping intersection and stopped. The Ford rolled ahead and Mrs. Conaway turned it to the left (east). This intersection is on a hill, down which West Third Street runs east to and past Bluff Street which is more than one-third mile distant. From the center line of Burch Street to a point 100 feet east, the downgrade of West Third Street is 3.94% (which the city engineer testified is a medium grade), 10.17% for the next 307 feet (which he testified is normally a very steep grade), then 9.57% for 150 feet, 8.5% for 200 feet, 10.08% for 50 feet, 14.52% for 100 feet, 16.43% for 100 feet, 16% for 150 feet, 16.62% for 200 feet, 11.43% for 100 feet, and 8.87% for 250 feet to the west line of Bluff Street.

Mrs. Conaway testified that as she turned the Ford into West Third Street it was too far out in the street to park and when she was pulling over to the curbing, "the car started to pick up momentum" and she applied the brakes and for the first time, "discovered there wasn't any brakes and I just kept going."

The curbing was high and the car was scraping it and was too close to jump over it. She tried to hit it and the car kept bouncing back. "All I know I was scraping along the side on my route down the hill and I saw the stop sign below and I don't know how close I was to it but it gave me such a fright being the car was going such a fast rate of speed I didn't know what to do, so I tried to shift it and discovering that didn't do any good I guess I fainted. I came to after the car had come to a complete stop. I have no memory of crossing Bluff Street or of hitting the telephone pole between Bluff and Locust Streets or of hitting the Kohler car."

At the scene of the accident an officer tested the brakes of the Ford by pushing the brake pedal to the floor with his hand and found they were not then operating.

Plaintiff pleaded appellant assumed control of the 1941 Ford automobile for transportation to his garage and had full and exclusive charge thereof, that Mrs. Conaway acted as appellant's agent in operating it while he pushed it with his automobile, and that the two were jointly or severally negligent in various particulars, which negligence was the proximate

cause of the collision. All these allegations were denied in appellant's answer. The specifications of negligence submitted to the jury were:

"a)    For pushing an automobile not in operation to and onto the brink of a precipitous hill without checking or without knowing the condition of said automobile.

"b)    By causing and knowingly permitting to be moved on a public street a vehicle which was in such unsafe condition as to endanger any person, and which did not contain those parts, or was not equipped at that time with equipment in proper condition and adjustment as required by law.

"c)    By causing a motor vehicle in traveling upon a downgrade to coast with the gears of such vehicle in neutral.

"d)    By operating a motor vehicle on a public highway which was not equipped with adequate brakes.

"e)    By failure to stop at an intersection where a stop sign is placed requiring traffic to halt.

"f)    By causing said automobile to be driven at an excessive rate of speed.

"g)    By failing to have said car under control.

"h)    By failing to keep a proper lookout."

I.    Appellant assigns error to orders of the court overruling his motion for directed verdict and for judgment notwithstanding verdict. He complains that plaintiff failed to prove: "(1) that the car brakes were defective when the pushing operation was started, and (2) that a check of the brake mechanism at or around that time would have revealed such defect." He contends: "These were vital links in the chain of proof of negligence-cause-damage."

The record does not show this complaint was made in the trial court. The motion for directed verdict did not mention it. This motion stated merely, that the evidence failed to show appellant was guilty of any act or omission which was the proximate cause of the damage, that it would be the duty of the court to set aside any verdict for plaintiff, and that the cause of the damage was the acts and omissions of Mrs. Conaway when she had sole possession and control of the Ford, operated by her. However, we will assume, without so determining, that the

motion for directed verdict was sufficient to permit consideration of this assigned error.

Section 321.430(1), Code of Iowa, 1954 (1958), provides that every motor vehicle when operated upon a highway shall be equipped with adequate brakes.

Code section 321.381 is a general statute relating to safety standards and regulations, which statute makes it a misdemeanor to move upon a highway a vehicle dangerous to any person, or without parts and equipment in proper condition as required by the chapter.

It is the rule in this jurisdiction, with some exceptions not here material, that where the legislature has fixed a certain standard of care by traffic regulations, any violation of such safety statutes is negligence. This doctrine was clearly enunciated in the much cited case of Kisling v. Thierman, 214 Iowa 911, 915, 916, 243 N.W. 552, 554.

Florke v. Peterson, 245 Iowa 1031, 1034, 65 N.W.2d 372, 373, states: "We have consistently held that violation, without legal excuse, of a statute which prescribes the care required under given conditions constitutes negligence per se.", citing Kisling, supra, and other decisions. These holdings were reaffirmed in Wachter v. McCuen, 250 Iowa 820, 96 N.W.2d 597. Various aspects of the doctrine are discussed at length in an article in 8 Drake Law Review, pages 110 to 127, entitled, Effect of Statutory Violations in Automobile Negligence Actions in Iowa.

Somewhat similar rules are in effect in various other jurisdictions. 60 C. J. S., Motor Vehicles, section 261; 5A Am. Jur., Automobile and Highway Traffic, section 249; Sothoron v. West, 180 Md. 539, 26 A.2d 16; Lochmoeller v. Kiel, Mo. App., 137 S.W.2d 625, 630; Phillips v. Delta Motor Lines, Miss., 108 So.2d 409, 413, 414; Alarid v. Vanier, 50 Cal.2d 617, 327 P.2d 897; Nettleton v. James, 212 Ore. 375, 319 P.2d 879, 882 et seq.; Trudeau v. Sina Contracting Co., 241 Minn. 79, 62 N.W.2d 492; Hammonds v. Mansfield, Tenn. App., 296 S.W.2d 652; Hassel v. Colletti, La. App., 12 So.2d 31; Turner v. Scanlon, 146 Conn. 149, 148 A2d 334, 338, 339.

Both briefs cite Amelsburg v. Lunning, 234 Iowa 852, 858, 14 N.W.2d 680, 683. That case does not support appellant's

906

contention he was entitled to a directed verdict. It points out that it was not necessary for defendant in that case to establish as a matter of law his legal excuse (frozen brakes) for his failure to stop at the stop sign, and it states: "* * * where there is substantial evidence of legal excuse for the violation of the statute the question is for the jury." It holds: "Under all the facts presented, it is our conclusion that the instruction as given by the trial court was not justified and that the question of legal excuse and an instruction relative to it should have been submitted to the jury."

The question of proximate cause in this case should not be confused with legal excuse. There was substantial evidence that the collision and damage to plaintiff were the natural and probable consequences of the negligent acts or omissions in question. The evidence was sufficient to make the question of proximate cause a question of fact for the jury.

In the case at bar the evidence tended to prove the Ford was operated upon the highway without brakes, in violation of Code sections 321.430(1) and 321.381, supra. However, as already stated, appellant contends he was entitled to a directed verdict in the absence of evidence the brakes on the car were defective when the pushing operation was started and that the defect was discoverable. This is contrary to the established rule as stated in Kisling v. Thierman, 214 Iowa 911, 915, 916, 243 N.W. 552, 554, supra: "when in the trial of a case—the other elements being proven—it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant may offer proof excusing his failure to observe such legal standard of care."

That was the situation in the case at bar. The evidence the Ford was operated upon the highway with defective brakes, in violation of the safety statutes, made a case for the jury in the first instance. It follows that the orders of the distinguished trial court overruling the motions of defendant Sheffert for directed verdict and for judgment notwithstanding verdict were correct.

II. Appellant refers to the testimony of Mrs. Conaway as a witness for plaintiff, that her rapid approach to the stop sign

so frightened her that she tried to operate the shift "and discovering that didn't do any good I guess I fainted." It is contended this shows Mrs. Conaway had no volition or the opportunity of choice, that the collision was not "shown to have been the conscious act of the defendant's volition", and that "the rule excusing one for acts or omissions caused by physical unconsciousness" is applicable.

This contention is not meritorious. It is unnecessary to refer to the authorities cited by appellant in this connection, other than to point out that none of them holds the loss of consciousness of one, from fright in the face of imminent danger of a collision, excuses any previous negligence of such person as a cause of such situation. See annotation in 28 A. L. R.2d 12 et seq.

III. Instruction No. 9 submitted to the jury the issue of Mrs. Conaway's agency for appellant in the pushing operation. It states in part:

"If you find from the evidence that Joseph Sheffert had taken full charge and control of the operation of moving the 1941 Ford automobile which was being guided by Ellen Conaway and if you further find that said operation of moving said automobile was being conducted under the supervision of Joseph Sheffert and at his request, and if you further find that the assistance rendered by Ellen Conaway was rendered under the direction of Joseph Sheffert, then you shall find that Ellen Conaway was operating said automobile as the agent of Joseph Sheffert.

"You are instructed that in this situation if you find that Ellen Conaway was acting as the agent of Joseph Sheffert, then the negligence of Ellen Conaway, if any, would be imputed to Joseph Sheffert, and both parties would be jointly and severally liable for the damages proximately resulting from the negligence of Ellen Conaway.

"If on the other hand you find from the evidence that Joseph Sheffert had not taken full charge and control of the operation of moving the 1941 Ford automobile which was being guided by Ellen Conaway, or if you find that said operation of moving said automobile was not being conducted under the supervision of Joseph Sheffert or at his request, or if you further

find that the assistance rendered by Ellen Conaway was not rendered under the direction of Joseph Sheffert, then you shall find that Ellen Conaway was not operating said automobile as an agent of Joseph Sheffert.

"You are instructed that in this situation if you find that Ellen Conaway was not acting as the agent of Joseph Sheffert then the negligence of Ellen Conaway, if any, would not be imputed to Joseph Sheffert, and he would not be liable for the damages proximately resulting from the negligence of Ellen Conaway, if any."

Appellant excepted to Instruction No. 9 "for the reason that there is no evidence in the record from which a jury would be justified in finding that any state of agency existed in any manner or kind between Joseph Sheffert and Ellen Conaway."

■ A garage operator to whom the entire control of an automobile has been surrendered by the owner for testing, repairing or transporting it to and from such garage, is generally deemed an independent contractor for whose negligence the owner of the automobile is not liable. 5A Am. Jur., Automobiles and Highway Traffic, section 579; 60 C. J. S., Motor Vehicles, section 438b, page 1108; 35 A. L. R.2d, annotation, pages 805 and 811. Johnson v. Selindh, 221 Iowa 378, 265 N.W. 622, 39 N. C. C. A. 289.

This rule has been held applicable despite the presence of the owner of the automobile at the time of such negligence. Menge v. Manthey, 200 Wis. 485, 227 N.W. 938.

■ It has been held also, that a person procured by the garage operator to assist the latter in his project does so as his agent and not as agent of the owner of the motor vehicle. Thus in Trautman v. Warfield & Rohr Co., 151 Md. 417, 421; 135 A. 180, 182, where a truck owner's chauffeur, waiting to receive it for the owner, after repairs, was asked by the foreman of the repair shop to drive it around the block while the foreman stood on the running board directing tests and making observations, it was held, that, while so engaged the chauffeur was not the servant of his employer, the truck owner, but, "either as a volunteer or as a servant, depending upon the extent of the authority committed to the foreman by the repairman, was temporarily working for the repairman."

In Lane v. Roth, 3 Cir., 195 F. 255, 115 C. C. A. 227, whether one who usually drove a truck for the owner, was at the time he negligently injured plaintiff, acting as a servant of the owner or of the company which was repairing it, was held a question for the jury, under the evidence in that case.

Cowley v. Bolander, 120 Ohio St. 553, 555, 166 N.E. 677, 678, was an action for damages to Bolander caused by a disabled automobile, owned by Simmons, while being towed by an employee of defendants with Simmons at the wheel. There was evidence tending to show the accident resulted from the negligence of Simmons. The court held this question should have been submitted to the jury, stating:

"The relation of the defendants and Simmons, from which would arise their respective duties and responsibilities, was a question of fact to be determined by the jury from the evidence, under proper instructions by the court. Fleishman, the employee of the defendants, sent in response to the call of Simmons to take possession of and tow to the defendants' garage the stalled automobile, testified that, not having brought an assistant with him, he not only directed Simmons to take the steering wheel of the disabled car, but also instructed him as to the manner of operating and driving the towed car, and there is other evidence that Fleishman took full charge of the operation and assumed responsibility therefor. It is further disclosed that Simmons had no previous experience in guiding and steering a towed automobile. There is, therefore, evidence in the record tending to show that Simmons, though the owner of the car being towed, was acting for the defendants, and in the assistance which he rendered in the operation for which defendants were employed was under the supervision and direction of defendants' employee."

In Davis v. Riggle, Fla. App., 105 So.2d 600, 601, a milk truck owned by Davis and driven by his agent, Brown, which was transporting milk to Davis Dairy Farms, became disabled, and defendant Riggle responded to a call for a wrecker, as an independent contractor, and undertook to return the loaded truck to the dairy. Brown, the driver for Davis, volunteered to sit in the truck which was to be towed backward and to guide its front end. Riggle accepted his help and gave Brown instruc-

tions about such steering. The truck overturned and Davis and the dairy sought damages from Riggle. In reversing a judgment based upon a directed verdict for defendant, the court stated:

"Also there was a triable issue as to negligence of the driver Brown. If it is made to appear from the evidence that by request or by volunteering Brown became the helper for the wrecker Riggle, and that he was acting under Riggle's authority and instructions in the operation, that would justify determination that Brown was then acting as a servant of Riggle. In that status, if Brown's negligence was established, his negligence would not preclude recovery by plaintiffs, but could be a basis for imposing liability on Riggle, aside from and in addition to any showing of negligence on the part of Riggle himself. Cowley v. Bolander, 120 Ohio St. 553, 166 N.E. 677; Hanks v. Landert, 37 Wash.2d 293, 223 P.2d 443, 30 A. L. R.2d 1012."

Appellant relies upon Hanks v. Landert, supra. In that case Mallum experienced difficulty in driving his Chevrolet over a pass made slippery by snow and ice, and engaged Landert to tow it while Mallum steered it. The towed Chevrolet collided with plaintiff's car and plaintiff sued Landert.

The decision holds Landert was functioning as an independent contractor in towing the Chevrolet, but was not liable for any negligence of Mallum in steering it, stating the project was, in essence, Mallum's, who remained in his car and to some extent in control of it, that the instructions given Mallum by Landert related only to the maintenance of effective liaison between them, and that neither Mallum nor Landert was representing anyone save himself.

This decision appears to be contrary to the weight of authority and we do not agree with its reasoning. Moreover, there are factual differences which make such decision and reasoning inapplicable to the case at bar.

In the case at bar appellant was engaged to take the Ford from its parking place, check it, and repair it, if necessary. There was then no suggestion Mrs. Conaway would accompany the Ford or assist in moving it. The project of pushing it seems to have been conceived and put into operation by appellant upon his arrival at the Conaway apartment. In this project he engaged the assistance of Mrs. Conaway, as his agent, within the

broad definition of that term. He had and exercised the right to determine the route of the Ford and to direct her and control the details of her work in guiding it and handling its clutch and transmission.

We find no error, prejudicial to appellant, in permitting the jury to determine whether Ellen Conaway was assisting in operating the Ford as appellant's agent. Nor do we agree it was necessary or practicable for the instruction to have listed each element of control essential to create the relation of principal and agent between appellant and Ellen Conaway.

Other errors assigned by appellant have been considered and determined to be without substantial merit.

The judgment of the district court is affirmed.—Affirmed.

All JUSTICES concur.