Harry Austin HEWITT, a Minor, by His Next Friend and Natural Guardian, Gerald Lester Hewitt, Plaintiff-Appellant,

v.

Dr. Edwin C. MASTERS and Bess Masters, Defendants-Respondents.

No. 50307.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1964.

Modified on Courts own Motion Jan. 11, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 11, 1965.

Dalton & Treasure, Kennett, for appellant.

Elvis A. Mooney, Briney & Welborn, Joe Welborn, James E. Spain, Bloomfield, for respondents.

HENRY J. WESTHUES, Special Commissioner.

Plaintiff Harry Austin Hewitt, a minor, by his natural guardian, Gerald Lester Hewitt, filed this suit against Dr. Edwin C. Masters and his wife, Bess Masters, to recover damages in the amount of $150,000 for personal injuries sustained when a car driven by Dr. Masters collided with the rear of a Ford car. A trial resulted in a verdict in favor of the defendants. A motion for new trial was overruled and plaintiff appealed.

(We shall refer to the parties as plaintiff and defendants throughout the opinion.)

On this appeal, plaintiff's sole contention is that instruction No. 4, given by the trial court at defendants' request, was erroneous for the reason that it imposed on plaintiff the exercise of the highest degree of care; further, that the instruction assumed facts which were in dispute.

The record discloses that there was a sharp conflict in the evidence with reference to a number of issues of fact, while many other facts were not in dispute. Those facts not in dispute were: On the afternoon of July 18, 1961, Gerald Lester Hewitt and his son, the plaintiff, left Malden, Missouri, where they lived, in a Dodge truck for the purpose of picking up a Ford car which was stranded near Dutchtown on Highway 25. When they

reached the point where the Ford was located, the Ford was hitched to the rear of the truck by a chain which was run through an iron pipe about 5 feet in length. On the return trip toward Malden, the father drove the pickup truck and plaintiff occupied and steered the towed Ford. On the way south on Highway 25, two stops were made to check the hitch, lights, and other parts of the vehicles. The final stop was made at a point about 2 miles north of Aquilla, Missouri, on the south slope of a hill. The purpose of this stop, as testified to by Gerald Lester Hewitt and plaintiff, was that the father wished to advise his son about steering the Ford, particularly about the use of the brakes so as to keep the towed car from jerking when passing over the hills to the south. Mr. Hewitt alighted from his truck and went between the truck and the towed car where he was joined by his son, the plaintiff. While in that position and within 5 minutes after the vehicles were stopped, Dr. Masters' car, coming from the north, struck the rear of the Ford. The impact caused the Ford to strike the truck. Hewitt and his son Harry Austin Hewitt were seriously injured. Each, among other injuries, had his legs broken. Plaintiff's right leg was later amputated. After the wreck, the Ford was partially on the pavement and partially on the west shoulder. Dr. Masters' car was standing in the east lane headed north. The truck was out in a field several hundred feet to the southwest. The defendant Dr. Masters went toward the crest of the hill and flagged down an approaching car. This car went into the ditch on the west side of the road a few feet north of the Ford. All parties agreed that it was raining or misting and that the shoulders of the road were wet.

The disputed issues were: Plaintiff's evidence was that the truck and the towed Ford were stopped on the right shoulder of Highway 25 entirely off the pavement. Defendants' evidence was that the truck and the Ford were stopped in the southbound lane on the pavement.

Plaintiff's evidence was that the five lights on the rear of the truck and two lights on the rear of the Ford were burning. Defendants' evidence was that no lights were burning on the truck or the Ford.

Plaintiff's evidence was that the truck and Ford were stopped more than 300 feet south of the crest of the hill. Defendants' evidence was that the vehicles were stopped not more than 120 feet south of the crest of the hill.

Defendants contended that the plaintiff was guilty of contributory negligence.

Instruction No. 4, of which plaintiff complains, reads as follows: "The Court instructs the jury that although you may find and believe from the evidence that one or both of the defendants was guilty of negligence as charged by plaintiff, yet, if you further find and believe from the evidence that the plaintiff was also guilty of negligence, in failing to exercise the highest degree of care in the operation of the said Ford car upon the highway, by reason of the fact that plaintiff negligently and carelessly failed to exercise the highest degree of care in stopping and bringing to a standstill said Ford car on the traveled portion of Highway 25 and that plaintiff carelessly and negligently failed to give a reasonable warning of the presence of said motor vehicle on said highway, if you so find, and if you further find and believe from the evidence that said act or acts of negligence, if you find such act(s) or acts to be negligence, directly caused, or contributed to cause, plaintiff's injuries and the collision mentioned in evidence, then the plaintiff cannot recover and your verdict must be for the defendant."

Plaintiff, in his brief, earnestly insists that he was not an operator of a motor vehicle within the meaning of Sec. 304.010, V.A.M.S. This section provides in part that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest de-

gree of care, * * *." Plaintiff says that the actual physical control of the Ford was in the driver of the Dodge pick-up truck; that plaintiff could not have started or stopped the Ford; that the Ford was not in running order and was being moved under the power of the tow truck. The statute in question has been considered by the Missouri appellate courts in a variety of cases. It has been broadly construed. See Thaller v. Skinner & Kennedy Company, Mo., 315 S.W.2d 124, 1. c. 130 131 (7–10), and Teters v. Kansas City Public Service Company, Mo., 300 S.W.2d 511, 1. c. 516, 517 (7, 8) (9). It will be noted that in each of these cases the court held that the law requires a person operating a motor vehicle to exercise the highest degree of care for his own protection as well as for the protection of others. The case of Hay v. Ham, 364 S.W.2d 118 (Kansas City Court of Appeals), cited by plaintiff, does not support his contention. In that case, many authorities were considered. The court held that the statute should be given a reasonable interpretation. In State v. Edmonson, Mo., 371 S.W.2d 273, 1. c. 275 (2, 3), it was held that a person steering a car which was being pushed by another was an operator of a car within the meaning of the statute.

■■ In the case before us, Mr. Hewitt and his son, the plaintiff, were joint operators of the Dodge truck and the towed Ford. Hanks v. Landert, 37 Wash.2d 293, 223 P.2d 443, 30 A.L.R.2d 1012. The plaintiff, in moving the vehicle was steering the towed car. This seemed to be necessary. In fact, plaintiff's evidence as well as that of his father was that the vehicles were stopped at the point of the collision for the very purpose of instructing the plaintiff as to the manner of operating the Ford. When the vehicles were stopped, whether on the shoulder or on the pavement, it was dark. Was it the duty of plaintiff to have the lights on the rear of his car burning? Was not that act or failure to act a part of the operation of the vehicles? The answer to both ques-

tions must be in the affirmative. Negligence in this respect would be considered a failure to exercise the highest degree of care. See authorities cited supra and Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 1. c. 478 (18), and cases there cited.

■ Plaintiff, in the brief, says that "Instruction No. 4 prejudicially assumed in three different places that the Ford automobile was on the highway which was a controverted fact." We agree that the fact was controverted but do not agree that such fact was assumed in Instruction No. 4. The instruction, with reference to this subject matter, begins by stating, "if you further find and believe from the evidence * * *" and ends with the words "if you so find." The instruction, as we understand it, required the jury before authorizing a verdict for defendants to find as a fact that the Ford was stopped on the pavement and that no warning was given of its presence; further, the jury was required to find that such acts or failure to act constituted negligence. What we have said disposes of plaintiff's similar contention with reference to the question of warning.

■ Plaintiff says the instruction failed to hypothesize facts necessary to define "reasonable warning." Plaintiff cites the case of Phillips v. Stockman, supra, as authority. In that case, the collision with a parked car occurred in daylight and the court held that a verdict-directing instruction should have hypothesized facts which if true would have required the defendant to give a warning. Among such facts was that a setting sun was such as to blind the driver of an oncoming car. Judge Stone, in considering the question, stated, 351 S.W.2d 1, c. 475(15), "Under some circumstances (e. g., in dense fog, heavy rain, or blinding snow), the hazard or peril created by the stalling of a truck with any portion thereof on the paved roadway might be so flagrant and obvious as to charge the driver of the stalled vehicle *with immediate knowledge thereof*."

In the case before us, all parties agreed that it was dark and raining. The controverted facts were: Plaintiff claimed the vehicles were not on the paved portion of the road and that the rear lights on the parked vehicles were burning. Defendants claimed the vehicles were on the pavement without any lights. Each party introduced evidence to support his contentions. The jury by its verdict found that defendants' contentions were true.

We rule that the points briefed by plaintiff with reference to instruction No. 4 are without merit.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.