McNeal, Admr., *v.* Spencer et al., Appellants.

Argued January 27, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

Judgment affirmed as to appeal No. 16; judgment reversed as to appeal No. 17.

*Chas. E. Mills,* of *Mills & O'Connor,* for appellant No. 16.

*William G. Schrier,* for appellant No. 17.

*J. Ray Lilley,* with him *William P. Wilson,* for appellee.

OPINION BY MR. JUSTICE DREW, March 23, 1942:

This action in trespass to recover damages for the death of Paul K. Hicks, alleged to have been caused by the negligence of defendants, Vern Spencer and Charles Dickinson, was instituted by his personal representative. The jury returned a verdict against defendants jointly. Thereafter motions for a new trial and for judgment

n. o. v. were filed by defendants jointly and severally. The motions for a new trial were later formally withdrawn, and, after argument, the learned court below discharged the motions for judgment n. o. v. From the judgment entered on the verdict, separate appeals were taken by defendants, which were argued together and they will be disposed of in this opinion.

On August 16, 1939, a "milk strike" was in progress at the Brownbeck Creamery, in West Burlington Township, Bradford County. This creamery was served with milk by the farmers of the locality, and there was then a division of opinion among them as to continuing the supply. Paul K. Hicks and the other farmers were for discontinuing, while the defendants, Spencer and Dickinson, and others wished to continue. Hicks had seen Spencer the night before and had failed to persuade him. There were no threats or coercion of any kind. The record is free of anything suggesting force or violence. All the farmers were acquainted and maintained friendly relations.

At 8:30 on the bright summer morning of August 16, 1939, some of the farmers, including Hicks, had gathered at the creamery. They learned that Spencer had not arrived with his load of milk and Hicks decided to go down the road to meet him, to make another attempt to dissuade him from making the delivery. Hicks stated to the men at the creamery that he believed if he could talk to Spencer again he could persuade him to join their side. In an automobile owned and operated by William H. Kimball, accompanied by six other farmers, Hicks proceeded to meet Spencer, and when they were about a mile from the creamery they saw Spencer approaching, "coming over the hill", "approximately eight hundred feet" away.

When Spencer was first seen, Kimball immediately drew his automobile as far over as possible on the right side of the road and stopped it almost against the embankment there. All except Kimball alighted from the

car. One man got off before it stopped, crossed the road and went "Down in the field." The others, except Hicks, stood at the rear of the car. Hicks crossed the road, and standing three or four feet from the edge of the traveled road "in the grass", "in the meadow", raised his right hand, and looking at Spencer, signaled that he wished him to stop. But Spencer did not stop, or lessen the speed of his truck from 35 miles an hour, or keep his truck upon the road, although he had about 14 feet of the 18-foot traveled highway in which to pass the Kimball car. Instead, while some men in Spencer's truck were shouting "Mow him down", without any indication of his intention by signal or otherwise, with Hicks in full view, and for so long a time that he was bound to see him, Spencer ran his truck off the road at a point 25 feet from Hicks, and directly at him, and struck, ran over and killed him. The tracks of the truck, clearly recognizable, showed that it left the road 25 feet before reaching Hicks and returned to the road a short distance after striking him. This would seem to indicate that the truck was under control.

Spencer testified that he did not stop after the accident, although he knew Hicks, recognized him before he struck him and knew that he had knocked him down and run over him. He offered no excuse for his conduct. His sole defense was that Hicks appeared so suddenly in front of his truck that he could not avoid striking him. He had no answer to the admitted fact that he had run off the traveled highway, into the grass for three or four feet, before striking Hicks. His testimony was not believed by the jury, or the learned court below, and we are unable to give it any credit here. So far as Spencer is concerned, this is a case of gross negligence.

We find nothing in the record to sustain the finding of negligence against the other defendant, Dickinson. He was driving his car ten or fifteen feet behind the Spencer truck, which made it impossible for him to see Hicks, or avoid striking him after he was knocked down

and run over by the Spencer truck. Dickinson's view was entirely cut off by the truck immediately in front of him. He stopped within ten feet after notice of the accident.

There is no merit whatever in appellants' claim that Hicks was guilty of contributory negligence. He got out of the Kimball car and started to cross the road when Spencer was 600 to 800 feet away from him. He had every reason to believe that he would get across in safety, and he did. There is not a word in the testimony to show he "ran" across the road. He had time to take a position three or four feet off the highway "in the meadow"— what should have been a perfectly safe place, as safe a place as that occupied by any pedestrian on a sidewalk the same distance from the street. He had a right to presume that the Spencer truck, whether it stopped on his signal or not, would remain on the highway, and not be suddenly swerved off the road and upon him. He was in plain view of the driver from the moment he started to cross the road, certainly a sufficient time for the driver to see him and avoid striking him. The failure to anticipate the negligence of Spencer does not bar recovery. Hicks could properly assume, under the circumstances present here, that Spencer would use ordinary care to protect him: *Weiss v. Pittsburgh Rys. Co.,* 301 Pa. 539, 542. In *Ross v. Riffle,* 310 Pa. 176, where a pedestrian was injured by a motor vehicle while standing on the sidewalk at the curb, we said (p. 180) : "Plaintiff was in a place ordinarily safe, and it does not appear that any act of his contributed to the happening of the accident, for which reason he cannot be charged with contributory negligence: *Miller v. Siebert,* 296 Pa. 400. The case was for the jury to determine the negligence of either or both parties: *Maynard v. Barrett,* 261 Pa. 378."

The judgment is affirmed as to defendant, Vern Spencer; and as to defendant, Charles Dickinson, the judgment is reversed and here entered in his favor.