## Miller *v.* Duncan, Appellant.

Argued October 5, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*B. Patrick Costello,* with him *John M. O'Connell, Jr.,* and *Smith, Best and Horn,* for appellant.

*Louis J. Kober,* with him *Charles Skomski,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, January 17, 1966:

Duncan, the appellant and original defendant, was pushing with his own car the stalled* automobile of Hough (his father-in-law). He pushed Hough's car with Hough at its wheel, slowly about 125 feet to the top of a slight grade in order to enable Hough to start it—pushing a stalled car is frequently done by well-intentioned motorists. At the top of the incline, Duncan stopped pushing Hough's car, whereupon Hough drove his car with the aid of gravity—his engine was still stalled and his lights were dim—slowly downgrade about *175 feet* on Brownstown Road in the village of Larimer, Westmoreland County. At this point, Hough's bumper hit plaintiffs who were struck, according to their testimony, while they were walking on a three-foot berm near the property line of their home. Defendant's evidence, on the other hand, proved (if believed) (1) that Hough's automobile was never on the berm, but was continually on the paved portion of the road, and (2) that plaintiffs (who never saw Hough's car before they were struck) were hit while walking across the road at a place where there was no regular crossing. Duncan submitted a point for binding instructions which was refused.

The jury returned a verdict for the defendants and made special findings: (1)(a) that Duncan was not negligent, and (b) that his negligence was not the proximate cause of the accident; and (2) that Hough

---

* stalled because of lack of gas, and later possibly because of battery trouble.

(a) was negligent and (b) his negligence was the proximate cause of the accident, and (3) that both plaintiffs were contributorily negligent. The lower Court granted a new trial as to both Hough and Duncan because it had failed to charge the jury properly "on the right of pedestrians, particularly so when not on the highway." From this Order granting a new trial, the original defendant, Duncan, took this appeal.

Duncan contends that this Order of the lower Court should be reversed and judgment entered for him on the ground that plaintiffs failed to prove any negligence on his part. We agree with this contention. It is clear as crystal to anyone who has ever driven an automobile that plaintiffs failed to prove that Duncan was negligent, or if negligent that Hough's driving was not a superseding cause of plaintiffs' injuries. To hold otherwise would mean that it is dangerous and *negligent* for a motorist to *ever* use his car to aid a stalled car by pushing it slowly in order that it may have a chance of getting started.

Appellees liken Duncan's action to that of a man who negligently shoots an unguided rocket or missile into the air, or pushes a car down a road without any power of subsequent control. The analogies are clearly inapplicable—they overlook the important factor and the sharply distinguishing fact that Hough's pushed car was not like a riderless horse or a driverless car or carriage; it had a driver who could completely control it and was under a duty to control it. If Hough failed, any injuries which thereafter occurred were the result of his negligence or of the negligence of the plaintiffs and were not and could not have been caused by Duncan.

*Fritz v. York Motor Exp. Co.*, 358 Pa. 398, 58 A. 2d 12, controls this case. In that case the Court said (page 401):

"Where the facts and the law of a case show no liability on the part of a defendant and would therefore have required the affirmance of a point for binding instructions an order of the court granting a new trial, after verdict for the defendant, will be reversed on appeal, the verdict for the defendant will be reinstated and judgment entered thereon: Fornelli v. Pennsylvania Railroad Co., 309 Pa. 365, 164 A. 54; Walters v. Federal Life Insurance Co., 320 Pa. 588, 184 A. 25; Brogan v. Philadelphia, 346 Pa. 208, 29 A. 2d 671."

The Order granting a new trial in plaintiffs' suit against Duncan is reversed; the verdict of the jury in favor of Duncan is reinstated, and judgment for Duncan entered thereon.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Donald M. Miller and Augusta Miller, plaintiffs in this case, were injured by an automobile while they were walking on the berm of Brownstone Road in the village of Larimer, Westmoreland County, in front of their home, just as they had crossed the highway. The colliding automobile was being operated by Raymond C. Hough after it had been pushed by Conrad Duncan, son-in-law of Hough. The Millers brought suit in trespass against Duncan, who, in turn, brought in as additional defendant the Estate of Raymond D. Hough, he having died before the litigation got under way. At the trial the jury returned a verdict for the defendant and original defendant.

The plaintiffs moved for a new trial which the trial court affirmed because it had failed to charge the jury properly on the subject of the rights of pedestrians. Duncan, the original defendant, appealed.

The majority of this Court has reversed the order for a new trial and enters judgment in favor of Dun-

can, stating he was not negligent. The facts manifest that Duncan conducted himself in such a fashion that the jury could well find him guilty of negligence. A brief survey of the event is in order. Raymond C. Hough, driving a 1954 Oldsmobile, came to a dead stop on Brownstown Road in the village of Larimer, Westmoreland County, because of an empty gasoline tank. Conrad Duncan, his son-in-law, appearing on the scene, supplied Hough with gasoline but Hough still could not get his car to move because of battery trouble. Duncan then drove his car (a 1950 Oldsmobile) to the rear of the Hough car, pushed it for a distance of some 125 feet, and then detached himself at a point where the descending grade in the highway allowed the Hough automobile to move by force of gravity.

The majority contends that since Duncan was in no way supplying locomotion to the Hough car for some 178 feet prior to the accident, Duncan was in no way responsible for the accident which followed. The plaintiffs testified they saw no lights on the Hough car. A witness testified that 15 or 20 minutes after the accident the lights on the Hough car were "very dim." Duncan testified that the right headlight of the Hough car was partially hidden from his view.

Duncan did not disengage himself from responsibility for the movement of the Hough car simply because his car was physically separated from the Hough vehicle at the time of the accident. It cannot be stated as a matter of law that Duncan's influence over Hough's automobile came to an end when the cars separated. In *Cooper v. Heintz Mfg. Co.*, 385 Pa. 296, the appellant Heintz claimed that it was not liable for the injuries sustained by the plaintiff Cooper who, at the time of the accident, was working in a transformer tower within the confines of an operation conducted by another concern, Baton, etc. We held that Heintz was liable since it supplied electricity for that build-

ing. The appellant argued that no Heintz employee was in or near the transformer room when Cooper was injured. We said: "This argument fails in both logic and logistics. A submarine commander does not escape responsibility for the sinking of a ship because he does not ride the torpedo with which he sends his victim to the bottom of the sea. The physical location of an electric transformer by no means establishes the identity of the person or firm controlling its operation. The magic of electricity so annihilates distances that an operator in one building can control an electric device in another building which may be located yards or even miles away."

When Duncan began to push Hough's automobile, he knew he was putting into motion a dangerous instrumentality. And he was doing this at nighttime, thus augmenting the dangerousness of the operation. If the lights on the Hough's car were "very dim", he knew or was charged with knowing that, not only would they fail to throw sufficient illumination to guide the car but they would also create confusing shadows. The jury could find that Duncan entertained some doubts himself as to whether Hough could carry on without danger because, even after the cars had disconnected, he continued to follow Hough, explaining later that if the Hough car "could not get started", he would push it to the side of the road and take Hough home. Duncan was in such proximity to the Hough car that, when the bonebreaking accident collision occurred, he saw Mrs. Miller "twirling" and "whirling."

The evidence in the case could warrant a factual conclusion that Duncan participated in the movement, direction and propulsion of Hough's car. The man who fires off a rocket does not disconnect himself from the orbit of the missile because he has thrown away the match with which he lit the fuse.

When Duncan undertook to become a vehicular Samaritan he had to be sure that he would not, through misjudgment, carelessness or negligence, bring greater harm, than that already previously suffered, to the object of his benefaction. A Samaritan who so manipulates a wounded car as to visit great damage on others, and even endanger the life of his own beneficiary, might do well to pass by and leave rescue work to men of better judgment who are not blinded by their own shadows.

The majority says that to retain Duncan in the case as an additional defendant would "mean that it is dangerous and negligent for a motorist to ever use his car to aid a stalled car by pushing it slowly in order that it may have a chance of getting started." This does not follow. Pushing a stalled car will always be a salutary act of benevolence and the time will never come in America, I sincerely believe, when motorists will avert their eyes to brother motorists in distress on the highway. However, a voluntary act of assistance must be accomplished with care, as much as a paid act of hire. Otherwise, it is not benevolence. If a motorist decides to be a good Samaritan he should really help the man who falls by the wayside; not push him over a cliff. The best thing Duncan could have done was to do as the original Good Samaritan did—take Hough home that night. Then, on the next day they could both have returned to Hough's stalled car and operated it so they could both see where they were going. If they had done *that,* neither of them would have ended up in court, and Mrs. Augusta Miller would not have been run down while she was crossing the lawn of her own home.

I dissent.

_____

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I must dissent. It is my conclusion that the question of Duncan's liability was for the jury, and that the

lower court's action in granting a new trial, because of a patently inadequate charge, was correct.

The testimony was in dispute on very material points, but from the evidence the jury would be warranted in finding the following facts: The accident involved occurred in a dark rural area. The roadway, sixteen feet wide and improved with macadam, was covered with three inches of snow. The plaintiffs, Donald M. Miller and Augusta Miller, his wife, were returning to their home from a firemen's hall, located diagonally across the street. After they had completely crossed the roadway and were walking parallel therewith on a three foot wide abutting berm (there were no sidewalks), they were hit from behind by the Hough automobile. The impact was forceful enough to drive Donald Miller through the air for a distance of fifteen feet, his body landing on the lawn in front of his home.

Before the accident, the Hough automobile, parked about 700 feet distant from the accident point, was out of gas. Its battery was disabled and would not turn over the motor. *Its headlights were also dim.* After securing and putting some gas in Hough's auto, Duncan then used his own car to push the stalled vehicle (with Hough at the wheel) down the roadway. Duncan was unable to see beyond the Hough automobile. About 178 feet from the accident point, the bumpers of the automobiles disengaged and, while the motor of the Hough automobile had not yet started, it propelled itself down the roadway from the momentum of the pushing and the downward grade of the road. Since Hough died (from other causes) before this case came to trial, we have no explanation of why his automobile left the roadway and went up onto the berm.

While the questions of Duncan's negligence and whether or not Hough's negligence was a superseding cause are admittedly close, I do not believe we can resolve them as a matter of law.

Road conditions were undeniably dangerous. Hough's automobile had no power of its own. Its headlights were not functioning properly, and hence its driver's front vision was very limited, if not totally negative. Can it be said, *as a matter of law,* that one who propels an automobile down a dark public highway under such circumstances is acting as a reasonably prudent person, and that this conduct is not a proximate cause of a collision, occurring within seconds after the pushing stopped? I think not.

While there are no known Pennsylvania authorities directly on point, at least two other jurisdictions have considered analogous, if not similar, situations, and ruled that the questions involved here were for the jury. See, *Miller v. Query,* 201 Va. 193, 110 S.E. 2d 198 (1959), and *Kohler v. Sheffert,* 250 Iowa 899, 96 N.W. 2d 911 (1959).

Even though in the instant case the jury returned a verdict for both Hough and Duncan, it is beyond question that the trial court's jury instructions were erroneous. The charge dealt at length on the rights and duties of a motorist and a pedestrian when the latter is hit while on the roadway; it was totally silent as to their responsibilities when the collision occurs off the roadway. The duties and degree of care required are vastly different in each instance. See, *McNeal v. Spencer,* 344 Pa. 417, 25 A. 2d 147 (1942), and *Burkleca v. Stephens,* 370 Pa. 371, 88 A. 2d 57 (1952).

I would affirm the grant of a new trial.