MARY MULHALL, Appellant, v. F. H. PFANNKUCH et al., Appellees.

NOVEMBER 13, 1928.

L. W. *Powers*, for appellant.

B. I. *Salinger*, for appellees.

MORLING, J.—Plaintiff rests her case upon the contention that she was employed by the director of the subdistrict, in pursuance of authority given by the board of directors to each director to hire his own teacher. The evidence  is extremely meager and unsatisfactory. Plaintiff alleged oral authorization, which was denied in the answer; but, while plaintiff was proceeding to prove the minutes of a board meeting held on July 1st, defendant withdrew "that defense." The plaintiff's alleged employment was for the school in Subdistrict No. 6. The opinion of the court below recites as follows:

"Ambrose Lawler, as director of Subdistrict No. 6 in said school township, attended a meeting of the board of directors held in July, 1927, and the board discussed the question of employing teachers; and it was left to each director to employ the teacher for his own district. It does not appear that any vote was taken upon this action; neither does it appear that there was any record made of such action. Apparently the conversation of the board was about as follows: 'President McDonald asked the question, "How about hiring teachers?" and some member responded, "Let each director hire their own teacher, as heretofore done." ' Director Lawler left the meeting before it had adjourned, and previous to the adjournment, and after Lawler had left, a motion was made that the school in District No. 6 be closed. Seven of the directors voted in the affirmative, and one in the negative, and the school was declared closed. On learning of this, certain patrons of District No. 6 made formal written protest to the school township board, in opposition to closing the school. Following this protest, the secretary called a meeting of the board, to consider a proposed reconsideration of the former action of the board in closing said school. At this meeting, and after discussion, the county superintendent was called in, and expressed his belief that a new

law had been enacted on the subject; but, he being unable to find such law, the board voted to let the county superintendent make further investigation of the law, and also obtain advice from the state superintendent. No further proceedings upon the part of the board are shown in the record. The county superintendent made further investigation, and at a subsequent time recommended that the school in District No. 6 be kept open.

"Director Lawler employed the plaintiff to teach a three months' term of school in said District No. 6, covering the months of October, November, and December, 1927. Plaintiff claims to have signed a contract in conformity with that employment, and that she left it with the secretary; that the secretary refused to file it, and the president of the board refused to sign it. This alleged contract is not in the record, but the evidence tended to establish that such an instrument actually existed, and contained the signature of the plaintiff as teacher."

Plaintiff taught one month. We have in the record actior of the board as follows:

"It is moved and seconded that we vote by ballot—Shall we close school in District No. 6 or not? 8 ballots cast, 7 voted closed, 1 to keep the school open; declared closed; carried."

The record of the meeting of July 7th, after setting out the petition to keep the school open, recites:

"After taking the matter up with our county superintendent for discussion, he informed the board that he didn't think that the board could close District No. 6, that the law was changed; and after looking through the law books for about two hours, was unable to find what the change was, but was satisfied that the law had changed; so the board decided to have the superintendent take the matter up in particular with the superintendent of the state and the attorney-general, and leave the matter as it is until we hear from our county superintendent, who agreed to furnish us with the necessary requirements of the law as soon as he gets the law on the questions from the state department. Carried."

The directors' minutes also show (as we understand it, with reference to a later meeting):

"A special meeting was called by the secretary, after a petition was circulated by Amby Lawler and Lou Kerigan, and signed by six directors of the board, at 8 o'clock, at District No. 2, without any reason for meeting stated, as an open meeting. It was said that the meeting was called for the purpose of voting, 'Shall we reconsider the motion of closing school District No. 6 or not, of July 1, 1927?' Joe McDonald, the president, was not present. It was decided that L. H. Christianson act as temporary president of this meeting. After discussing the matter, the board decided that it was useless to vote on the proposition, and did not vote, for that reason. Moved and seconded that we leave the matter with the county superintendent, 'Shall we open and have school in District No. 6 or not, according to law?'"

No vote was taken.

There is much contention on the question whether the facts were such that the school should have been closed, under Section 4231, Code of 1927, which reads:

"No contract shall be entered into with any teacher to teach any school in the school corporation when the average attendance in said school the last preceding term therein was less than five pupils, unless a showing is made to the county superintendent that the number of children of school age in said school district has increased so that seven or more will be enrolled in such school and will attend therein. In such case, or when natural obstacles to transportation of pupils to another district, or other conditions make it clearly inadvisable that such schools be closed, the county superintendent may consent to maintaining or reopening a school in said district for the ensuing term. It shall be the duty of the members of the school board residing in said district to make said showing, or any resident of said district may do so upon his own motion."

On September 23, 1927, the county superintendent wrote to defendant secretary an opinion, concluding:

"That the county superintendent's consent in this case merely makes it possible for the board to maintain or reopen a school if the board desires."

It is not shown that the board acted upon or pursuant to this advice. There are much evidence and much argument on

the question whether the action of the board in closing the school was legal. The board did declare the school closed. No appeal was taken. The validity of the action of the board in closing the school cannot be inquired into in this proceeding by mandamus to compel the officers of the board to sign contract. *Templer v. School Township,* 160 Iowa 398; *Preston v. Board of Education,* 124 Iowa 355; *Griebel v. Board of Supervisors,* 200 Iowa 143. Furthermore, the authorization given by the board to the directors to "hire their own teacher, as heretofore done," cannot possibly be construed as authority to hire a teacher for a school which the board immediately proceeded to close.

It is urged that the board delegated to the county superintendent the matter of opening the school, and that the county superintendent, "having familiarized himself with the facts, ordered the school opened;" and that "the subdirector, relying upon this action of the board and the direction of the county superintendent, employed the plaintiff to teach this school in District No. 6." Legally constituted board action to that end is not shown. Whether school shall be maintained in a particular schoolhouse depends upon many considerations. Section 4231 is not the only statute involved. *Templer v. School Township,* 160 Iowa 398. The law entrusts the determination of that question to the board of directors. Their authority cannot be delegated. *Young v. County of Blackhawk,* 66 Iowa 460; 29 Cyc. 1433. Plaintiff argues that the action of the subdirector was ratified. We find no evidence that the other members of the board knew of the plaintiff's employment, or acquiesced in it. Such evidence, moreover,, would not show ratification. Ordinarily, the members of a municipal board may not, by the individual knowledge and conduct of its members, ratify, any more than they may do the act originally. Ratification must be by the board, at a legally convened meeting, though corporate ratification may sometimes be inferred from corporate silence or inaction, as well as from positive action. 43 Corpus Juris 707; 3 McQuillin on Municipal Corporations (2d Ed.), Section 1360; *Young v. County of Blackhawk,* 66 Iowa 460, 465. Plaintiff cites *Hull v. Independent Sch. Dist.,* 82 Iowa 686, and *Athearn v. Independent Dist.,* 33 Iowa 105, in support

of. her claim of ratification. We need not discuss the correctness of these decisions, further than to say that they involved the hiring of teachers under the authority of the board, to teach authorized schools. Here, by the action of the board the school was closed, and the hiring of a teacher thereby forbidden. The remedy was to appeal, or for the board to revoke its action. The board, as such, did not revoke. Clearly, its official action could not be revoked by means of the individual knowledge of its members of the violation of their corporate action by one of them and their individual failure to object thereto. It is not claimed that the board, in legally constituted session, with such knowledge, and having the matter before it as a board for action, failed to disaffirm or reject plaintiff's employment, and that she was misled thereby. Plaintiff has wholly failed to show any authorized employment by the board of directors. She was bound to know whether or not the subdirector was authorized to employ her. *Hoffa v. Saupe*, 199 Iowa 515; *Shackelford v. District Township*, 203 Iowa 243. The defendants were within their province in refusing to execute the alleged contract.— *Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.