## DUGAN v. FRY et al.

Circuit Court of Appeals, Third Circuit.
September 23, 1929.

No. 4040.

Kalisch & Kalisch, of Newark, N. J. (Isidor Kalisch, of Newark, N. J., on the brief), for appellant.

Charles Stockdell Gray, of Newark, N. J. (Thomas Brown, of Perth Amboy, N. J., of counsel), for appellees.

Before WOOLLEY, Circuit Judge, and GIBSON and McVICAR, District Judges.

WOOLLEY, Circuit Judge. Thomas Dugan, a boy sixteen years of age, was riding on the frame of a bicycle, with his legs astride the forks and hanging over the handle bars, in front of another boy pedaling the machine. It was night. The boys had thus been driving around and around a city block for several hours. Upon turning a corner, the bicycle collided with an oncoming motor truck. Dugan was killed. In this suit by his administrator against the owners of the truck the verdict was for the defendants.

The trouble at the trial and on this appeal arose in the pleadings. The plaintiff by his complaint merely declared that "in the vicinity of 29th Street and 10th Avenue in the Borough of Manhattan * * * (his intestate was killed) wholly and solely through the carelessness and negligence of the defendants, their agents, servants and employees" in "that the said automobile was then and there operated, managed and controlled by the defendants," their agents, etc., "in a reckless, careless and negligent manner and was otherwise managed, operated and controlled in so

reckless, careless and negligent a manner, that it was permitted to violently, carelessly and negligently collide with and strike down plaintiff's intestate."

The defendants, instead of taking advantage of this faulty pleading, traversed its general allegations of negligence and set up separate defénses of contributory negligence and sole negligence of an independent agency, that of the boy operating the bicycle.

With this entire lack of specification of negligence the case went before a jury. Issues of negligence were tried as they developed at random during the trial. Oddly enough, the plaintiff, though he had not disclosed his case by his pleading, succeeded in having all the issues he raised by his evidence tried, and in consequence suffered nothing, except, as he now complains, from errors of the trial judge. Comment on this phase of the case is made in extenuation of any infirmity, short of error, in the rulings and charge by the trial judge who, entirely without the guiding aid of pleadings, was required to catch the issues as they suddenly emerged from the evidence and pass upon them as they came and went.

The case finally resolved itself (with variations) into two issues; one, the defendants' negligence, the other, the decedent's contributory negligence. The main charge of negligence imputed by the evidence to the defendant-owners of the truck was that it was being driven on the lefthand side of the street and therefore on the wrong side while the boys were moving on the righthand side of the street and therefore on the proper side. Such, in truth, were the positions of truck and bicycle. And so the plaintiff could have stopped there and, if the defendants had stood silent, would assuredly have had a verdict, for under ordinary circumstances the operation of a truck on the left side of a street would, under either New York or New Jersey law, be operation on the wrong side and would therefore amount to negligence. Whether evidence of such negligence is prima facie or conclusive is, however, one of the questions here. The plaintiff says it is conclusive and that it was error for the trial court to allow the defendants to say anything to excuse their violation of the literal terms of the righthand traffic law. The defendants, admitting that their truck was to the left of the center of the street, with reference to the direction in which it was moving, offered evidence to prove that, in the circumstances, it was on the proper or lawful side, and that the particular circumstance was a custom of long standing which grew out of

and was made necessary by the nature of the street bed and the several uses to which it was put. The admission of evidence of this custom over the plaintiff's objection constitutes his main assignment of error. The evidence on the point is in substance as follows:

Tenth Avenue is a public street in New York City extending in a northerly direction. Twenty-Ninth Street and Thirtieth Street, extending in a westerly direction, intersect Tenth Avenue at right angles. From curb to curb, Tenth Avenue is sixty feet and Twenty-Ninth Street thirty feet wide. In the center of Tenth Avenue, longitudinally, are two railroad tracks which join other railroad tracks south of Thirtieth Street, all leading to and from a railroad yard just north of Thirtieth Street.

The railroad tracks in the center of Tenth Avenue divide the highway into two lanes, normally northbound and southbound, each about twenty-two feet wide from the outermost rail to the curb.

When a train on either track blocks traffic moving west on Thirtieth Street and intending to go south on the westerly or right lane of the avenue, it is the practice of the traffic policeman at that point (on duty only in the daytime) to divert the traffic to the easterly or left lane, it being wide enough for traffic in both directions. Though literally violating the traffic law, the plaintiff concedes that traffic so diverted is pursuing a lawful course. Consonant with this daytime practice, a custom extending over twenty-three years had grown up for motor drivers at night to take the easterly or left lane when access to the westerly or right lane is blocked by a train of cars. As on the night in question a train of cars was moving on the northbound track into the yard beyond Thirtieth Street, completely blocking traffic, the defendants' driver, pursuant to the custom with which both he and Dugan were familiar, came out of Thirtieth Street and turned down the left lane of the avenue. When a short distance from Twenty-Ninth Street, Dugan and his companion on a bicycle turned from Twenty-Ninth Street into the avenue and struck, or were struck by, the truck.

The testimony was sufficient to prove the custom. The question is, even when existing and capable of proof, is a custom contrary to a righthand traffic rule admissible to excuse a violation of the rule? We think that in this instance it was. Traffic laws are not intended to provide an exclusive hard and fast rule applicable to all hazards and all situations. Paulsen v. Klinge, 92 N. J.

Law, 99, 104 A. 95. If they were in all cases mandatory, a direction by a traffic policeman contrary to the rule would not justify a driver in obeying him nor would it excuse him for not following the rule. This would cause inelasticity of traffic movement which would greatly congest traffic and increase traffic dangers. For instance, ·it would be hard to hold a person liable for driving (of his own motion) on the left lane of a highway when the right lane was undergoing repair, or when the right lane was marked dangerous, or when, because of an accident, traffic on that lane was temporarily impeded. Thus it is that, notwithstanding statutory mandates, the common law rules applicable to negligence in the circumstances are still to be applied to a given situation. Traffic laws only add an additional factor to be taken into account in reaching a finding of negligence. Jackson v. Geiger, 100 N. J. Law, 330, 126 A. 438. The presence of the truck on the left side of the avenue broken into two lanes by railroad tracks was not, in view of the established custom of movements, negligence per se. We therefore find no error in the court's rulings and instructions on the point.

■ If, in view of this custom, the truck was lawfully on the left lane of the avenue, the plaintiff next raised issues of negligence to the effect that the truck was on the left side of the left lane when it collided with the bicycle and, it having long been dark, was being driven at an excessive speed. On these issues the testimony was in sharp conflict. According to different witnesses the truck was proceeding at either five miles or sixteen miles an hour and either ten feet or three feet from the easterly curb; and the bicycle at eight miles or twenty miles an hour, three feet or ten feet from the curb. Evidently the situation did not call for the rule of the last clear chance.

■ It was also testified that the avenue at the point of the accident was well lighted, that the truck carried headlights that conformed to New York law and the bicycle was without a light. All this, however, was for the jury and as the jury has by its verdict found the facts in favor of the defendants, these issues are not here open to review.

■ On the issue of contributory negligence, the plaintiff assigns error in the court's failure to instruct the jury, as he requested, that Dugan was merely a passenger on the bicycle and therefore was charged with no duty of care and caution for his own protection and that if the accident occurred through the joint negligence of the drivers of the truck and bicycle, that would not excuse the truck driver's negligence. The latter question fell out of the case on the court's charge that it was necessary for the plaintiff to prove that the truck driver was negligent. If he was not negligent, even though the bicycle driver was negligent, the plaintiff could not recover. But on the question of contributory negligence, the plaintiff himself showed that Dugan was riding in a position forbidden by New York law and on the question whether Dugan was a passenger when so riding in front of the bicycle he also showed that the boys were on a "mutual pleasure trip," one pedaling, the other (Dugan) having control of and at times sounding the siren. Manifestly they were engaged in a joint boyish adventure, though with different responsibilities because of their different positions and opportunities to control the bicycle's movement and to give warning.

■ The court, early in the trial, put out of the case the law of imputed negligence, a ruling very favorable to the plaintiff, and left with the jury the question of his contributory negligence, in so far as such negligence could be found in the circumstances. In this it was right, for even if Dugan were a passenger there rested upon him a duty to protect himself with the means presently available, as shown by the many cases cited and reviewed in Bradley v. Mo. Pac. Ry. Co. (C. A.) 288 F. 484.

Lamentable as the accident was, we have found no errors committed by the trial judge nor have we discovered any finding by the jury implicit in its verdict that is not sustained by evidence.

The judgment must be affirmed.