GUSSIE GREUSEL, Appellant, v. O'BRIEN COUNTY, Appellee.

No. 43826.

JUNE 15, 1937.

Locke & Lampman, for appellant.

E. A. Jinkinson, County attorney, for appellee.

DONEGAN, J.—The plaintiff, Gussie Greusel, was the owner of a house and lot in the town of Sutherland in O'Brien county, Iowa. From the latter part of 1925 until the first of August, 1935, this house was occupied by a Mrs. Comour, who was a poor person receiving relief from O'Brien county. During all this time plaintiff resided in California, and the renting of this house was looked after by T. B. Bark of Sutherland. During the latter part of 1925, T. B. Bark had a conversation with L. O. Bidwell, who was then a member of the board of supervisors of O'Brien county, in regard to Mrs. Comour continuing to occupy the plaintiff's house at a rental of $12 per month.

On September 14, 1926, T. B. Bark presented a claim to the board of supervisors for 8 months' rent at $12 per month, in the sum of $96, which was allowed and paid. On February 21, 1927, a second claim was presented to the board of supervisors for five months' rent at $12 per month, in the sum of $60, which was allowed and paid. On April 13, 1928, a third claim was presented to the board of supervisors for 12 months' rent at $12 per month, in the sum of $144, which was allowed and paid. No further claims for rent of this house were made until the 25th day of August, 1935.

About February, 1932, Charles Tigges, who had succeeded Mr. Bidwell as a member of the board of supervisors, met Mr. Bark on the street and told him that the county would not pay over $10 a month house rent for any poor persons, and, about a year later, he told Bark that the county would not pay more than $8 a month thereafter. Mr. Tigges testified that these reductions had been made by a blanket resolution of the board, which applied to all properties rented for poor persons, and that he did not think that he made any report of his conversation with Mr. Bark to the board. W. J. Linder, also a member of

the board, testified that at one time Mr. Tigges said something in regard to the subject of the rent for Mrs. Comour, at a session of the board when they went from $10 down to $8, but that he could not tell anything further as to what was said before the board. Following this conversation between Tigges and Bark in 1933, there is no evidence of any further communication between any member of the board of supervisors or other person acting for the county and Mr. Bark or any other person acting for the plaintiff.

On August 25, 1935, plaintiff filed a claim for rent of said house, which had continued to be occupied by Mrs. Comour, from May 1, 1928, to August 1, 1935. This claim was for $896, comprising rent from May 1, 1928, to January 1, 1932, at $12 per month, in the sum of $528; rent from January 1, 1932, to January 1, 1933, at $10 per month, in the sum of $120; and rent from January 1, 1933, to August 1, 1935, at the rate of $8 per month, in the sum of $248. This claim was rejected by the board of supervisors and on September 27, 1935, plaintiff filed her petition in this action, asking judgment, for the rents set up in said claim, in the sum of $896 and interest from August 1, 1935. Answer was filed and trial had, and, at the close of the plaintiff's evidence, the defendant moved for a directed verdict in its favor. The trial court sustained the defendant's motion, verdict was rendered against the plaintiff pursuant to such ruling, and judgment was entered in favor of the defendant. From this judgment and the ruling of the court, plaintiff appeals.

The only error alleged and relied on for reversal is, that the court erred in sustaining the defendant's motion for a directed verdict on the ground that the plaintiff has not shown a contract existing between the plaintiff and the defendant county. The only question for determination is, therefore, whether the evidence was sufficient to show a contract between the plaintiff and the defendant county under which the plaintiff would be entitled to the rent claimed by her.

The plaintiff's claim is based on an express oral contract alleged to have been entered into by T. B. Bark, as agent for plaintiff, and L. O. Bidwell, acting for the county, about the latter part of December, 1925, for an agreed rental of $12 per month; modified about February, 1932, by Tigges, acting for the county, and Bark, as agent for plaintiff, by reducing the

monthly rental from $12 to $10; and again modified about February, 1933, by Tigges and Bark, acting for the respective parties, by reducing the monthly rental from $10 to $8. Conceding, as must be done in considering a motion for a directed verdict, that the conversations occurred between Bidwell and Bark and between Tigges and Bark, as claimed by plaintiff and shown by the evidence, these conversations alone would not establish an agreement binding upon the county. A single member of a board of supervisors has no power to bind the board or the county, unless specifically authorized to act for the whole board or unless an agreement made by him for the county is approved or ratified by the board. In Rice & Son v. Plymouth County, 43 Iowa 136, this court said:

"The foregoing instruction is clearly erroneous in this: It contemplates that a county may be bound under the circumstances of this case, by the acts, contract and declarations of a member of the board of supervisors and building committee, in the absence of any showing whatever that the board had authorized him so to act. If the doctrine laid down in the instruction is correct, the board as a whole should be abolished. * * *

"We are not prepared to say that everything done by the board must be entered of record, or that before the county can be bound there must be some writing or equally unequivocal act done or signed by the members of the board and filed and preserved. But *there should at least be an assent given by a majority of the members of the board while in session,* before the act, thing or matter will be binding on the county." (Italics are ours.)

In Tatlock & Wilson v. Louisa County, 46 Iowa 138, which involved a contract of employment, made by the chairman of the board of supervisors, we said:

"But *the consent of the board to the employment must be shown,* and when this is done the chairman, or any other member of the board as agent thereof, may be empowered to enter into and make the contract." (Italics are ours.)

See, also, Herrington v. District Township of Liston, 47 Iowa 11; Baker v. Johnson County, 33 Iowa 151; Smith v. Standard Oil Co., 218 Iowa 709, 255 N. W. 674; Modern Steel

Structural Company v. Van Buren County, 126 Iowa 606, 102 N. W. 536; Emmet County v. Dally, 216 Iowa 166, 248 N. W. 366.

An examination of the evidence presented in this case fails to show any such action by the board as would bind the county. While it is not necessary that the board's action in authorizing one of its members to make a contract, or in approving or ratifying a contract made by one of its members without authority, must, in all cases, be shown by the records of the board, there must be evidence showing such authorization or approval or ratification by the board while in session and acting as a board, before the county can be bound. The evidence in this case does not show any action by the board before the Bidwell conversation with Bark that would amount to an authorization to Bidwell to make a contract for the county. There is no evidence that Bidwell reported to the board that he had made any agreement with Bark that the county would pay rent for the house, to say nothing about the terms of an agreement, and there was not, therefore, and could not be any evidence of an express approval of any such agreement by the board. The evidence goes no further than to show that, following the conversation between Bidwell and Bark, in December, 1925, the board approved claims for rent at the rate of $12 per month up to some time in the spring of 1928. There is nothing in the evidence to show that any arrangement made by Bidwell with Bark was to continue beyond that time, or that Bidwell had any authority to make any arrangement that would continue for any specific length of time.

The last payment made by the county was the claim for $144, presented on April 13, 1928. No further claim was made until August 25, 1935. It is true, there is some evidence that, in the early part of 1932, Charles Tigges, who had succeeded Mr. Bidwell as a member of the board of supervisors, met Mr. Bark on the street and told him that, pursuant to a resolution of the board, the county would not pay over $10 house rent, and that, again, about a year later, Mr. Tigges told Mr. Bark that the county would not pay more than $8 per month house rent, and in response to the statements of Tigges, Bark stated, in substance, that this was all right. The evidence does not show that Tigges told Bark that the county would thereafter pay $10 and $8 respectively for the plaintiff's house, but it appears that

752

Tigges' statement to Bark was, in substance, that the board had passed a blanket resolution applicable to all houses occupied by persons on relief. There is no evidence that at the time such action was taken by the board, any specific reference was made to the plaintiff's property or to Mrs. Comour, or that any member of the board was authorized or directed to make any agreement with the plaintiff or her agent in regard to the reduced rentals. Mr. Tigges was called as a witness and stated that he did not recall that he ever reported his conversation with Mr. Bark to the board and, although Mr. Linder, who was also a member of the board, stated that some reference was made by Mr. Tigges at a meeting of the board of supervisors in regard to the subject of the rent for Mrs. Comour, he did not recall and could not tell anything further as to what was said. We find no evidence of any action by the board of supervisors, in connection with either of these conversations between Tigges and Bark, that would amount to an authorization to Tigges to make a contract, or to an approval or ratification of a contract.

Under the evidence shown by the record in this case, we think the plaintiff failed to show any contract that was binding on the defendant county, and the ruling of the trial court, directing a verdict in favor of the defendant, is, therefore, affirmed.—Affirmed.

RICHARDS, C. J., and all Justices concur.