Sadie A. LEMKE, Administratrix of the Estate of Otto B. Lemke, Deceased, Appellant,

v.

David MUELLER and Leslie Pechumer, Appellees.

No. 53172.

Supreme Court of Iowa.

April 8, 1969.

G. W. Templeton, Garner, William Pappas, Mason City, for appellant.

Erwin L. Buck, Britt, for appellees.

MASON, Justice.

This law action for damages was brought by plaintiff Sadie A. Lemke, as administratrix of the estate of her husband, Otto B. Lemke, against defendants, David Mueller and Leslie Pechumer, as the result of a rural intersection collision between the Lemke automobile, driven by Merle Brown, and a gravel truck owned by Pechumer, driven by Mueller. Injuries sustained in this accident caused Otto Lemke's death. Pursuant to trial a jury verdict for defendants was returned and plaintiff appeals from judgment thereon.

Plaintiff assigns four errors upon which she relies for reversal. The court erred in (1) sustaining defendants' motion to suppress evidence that the highway upon which the Lemke car was traveling at the time of the collision was by custom and usage established as a through highway; (2) suppressing evidence to show the acts of the Hancock County Board of Supervisors, the county engineer and road maintenance department in maintaining the highway as a through highway, and in holding the only manner such a road can become a through highway is by formal resolution of the board and maintenance of the proper signs thereon; (3) striking the testimony of Brown as to his state of mind as he approached the intersection where the collision occurred; and (4) giving instruction 7 telling the jury this highway, known and referred to as "Old Highway 18", is not a "through" or "stop" highway.

July 24, 1965, Otto Lemke and Merle Brown were on a business trip traveling west from Britt on Old Highway 18. Lemke was riding as a passenger in the front seat of his automobile. At an intersection with a gravel secondary road about two miles west of Britt the automobile collided with Pechumer's gravel truck coming from the north. "Old Highway 18", formerly U. S. Highway 18, between Britt and Wesley was a hard-surfaced road. On April 11, 1962, it was removed from the state primary road system and returned to the Hancock County secondary road system. The Hancock Board of Supervisors did not adopt a resolution or take any formal action to designate this road as a through highway, but apparently did nothing to apprise the public of the change. Plaintiff attempted to show by offer of proof that this highway was maintained as a through highway by the board, the engineer, and the road maintenance men, that the public considered it a stop or protected highway, and that officials and residents of the area, including the driver of plaintiff's vehicle, Brown, believed it to be a through highway on the date of this accident.

At that time there was no stop sign at the entrance of the gravel road from the north. Mueller, a newcomer in the vicinity, testified he had never seen a stop sign at that point, did not know Old Highway 18 was considered a through highway and had only crossed it a few times prior to the accident.

Brown testified he was going between 40 and 45 miles per hour as he approached this intersection and did not reduce his speed, he looked to the right and left but did not see defendants' truck until immediately before the impact. There was testimony a truck the size of Pechumer's approaching from the north on the gravel road could be seen for 1000 feet by a driver of an automobile coming from the east on Old Highway 18.

Mueller testified he was proceeding south at a slow speed as he came to this intersection and did not see the Lemke car until the moment they collided at or near the center of the intersection. His truck struck the Lemke car just in front of the right front door and overturned on the south side of the intersection. The Lemke car landed in the cornfield at the southwest corner of the intersection. Lemke was thrown from the automobile and incurred fatal injuries.

In her petition plaintiff charged Mueller with proximate negligence in failing to (a) keep a proper lookout, (b) have his truck under proper control, (c) yield the right-of-way and (d) stop or yield the right-of-way at the entrance to a through highway, contrary to section 321.321, Codes, 1962, 1966.

In answer to plaintiff's petition and as a complete defense defendants alleged plaintiff's decedent and Brown were negligent in failing to (1) keep a proper lookout, (2) reduce their vehicle's speed to a reasonable and proper rate when approaching an intersection of two highways, (3) yield the directional right-of-way to defendants' vehicle and (4) have their vehicle under control. Defendants also alleged the negligence of Lemke and his driver Brown was a proximate cause of the accident and plaintiff's damages.

The court submitted to the jury plaintiff's first two specifications of negligence, i. e., failure of proper lookout and control, and all defendants' specifications. No objections to the instructions, except instructions 7 and 14, appear and only the objections to No. 7 are argued here.

Prior to trial defendants moved to suppress evidence that Old Highway 18 at the time and place of this accident was by custom, usage, or informal action of the county board of supervisors a through highway because the same would be wholly incompetent, irrelevant and immaterial. They also alleged that even interrogation as to these matters would prejudice defendants, regardless of the rulings and admonition by the court and asked "the court to exercise its inherent power and discretion for the

orderly, fair, just conduct of the trial and to direct plaintiff's counsel not to question any witness before the jury with reference to the custom and usage with respect to the road upon which plaintiff's decedent was traveling being a through highway, nor to attempt to establish by testimony of members of the board of supervisors, county engineer, or highway patrolman with reference to any informal action or agreement by said board with respect to the stop signs remaining in place after said road was removed from the primary system, or directions to the county engineer or maintenance men with respect to the replacement of said signs, as might be necessary thereafter." Defendants further moved "to suppress any evidence * * * of custom, usage or intention to use said road as a through highway for any purposes or by any means whatsoever. That under Iowa law determination of the status of a highway, and particularly a through highway, is a matter of law and not a matter of fact to be determined by a jury."

In ruling upon the motion and plaintiff's resistance thereto the court said:

"In attempting to submit to a jury the issue of a highway and its character as a through highway an impossible and insoluable situation is created. That plaintiff here, traveling on the favored road so established by custom and usage, would be entitled to the benefit of the rules of the road pertaining to such favored highways, and specifically in this case an instruction under Code section 321.321. With respect to defendant, on the other hand, a jury question would exist as to his knowledge of the custom."

The court then reasoned:

"As [indicated] the [stop] sign had not been in place for at least a month, and, * * * perhaps five months. Consequently, the jury would have to make a finding as to whether defendant had knowledge so as to be required to yield under section 321.321 or, if the jury found he had no knowledge of such custom, then he would be entitled to the right-of-way under the general direction statute applying to the intersection of non-favored roads. The jury, therefore, could find itself in the position of having both a plaintiff and a defendant having the right-of-way under different statutes."

In resistance to defendants' motion to suppress, plaintiff's counsel stated: "I do want to apprise the Court, as far as plaintiff is concerned, while we think custom and usage is important, we think the real issue here is what the board of supervisors and the county engineer actually did in connection with this road. The fact that stop signs were constantly in place and the road was considered by them as a through highway and was held out to the public generally as a through highway, is the nub of our contention here. So while I do feel custom and usage have something to do with it, I don't want the Court to think that is the most important thing we are going on, we feel the other is stronger."

■ We are satisfied the court did not err in sustaining defendants' motion to suppress evidence of custom and usage for the purpose of establishing the status or character of the highway on the date of this accident.

■ I. A "through" highway in this jurisdiction cannot be established by usage or custom, but only by formal action of legislatively designated authorities in the manner prescribed.

The Fifty-seventh General Assembly in 1957 enacted what is now section 313.2 of the Code, which provides in part:

"Any portion of said primary road system eliminated by reconstruction or relocation shall revert to and become part of the local secondary road system, * * *."

Section 306.2(5) provides: "The term * * * 'local secondary road system' shall include all those secondary roads which are not now, or may not hereafter be, included in the farm-to-market road system."

Section 306.1 provides that the secondary road system shall be subdivided into farm-to-market roads and local secondary roads, and section 306.2(4) states farm-to-market roads shall include those main secondary roads which have been designated as farm-to-market roads as the law may provide. It does not appear that this road has been designated as a farm-to-market road.

A local secondary road may be established as a through highway under the provisions of section 321.236(6).

A "Through highway" means every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required to stop before entering or crossing it and when stop signs are erected as provided in chapter 321 of the Code. Section 321.1(53).

Section 321.236 of the Code indicates how local authorities, including boards of supervisors, may designate or establish a "through" highway in their localities. It states:

"Local authorities shall have no power to enact, enforce, or maintain any ordinance, rule or regulation in any way in conflict with, contrary to or inconsistent with the provisions of this chapter, and no such ordinance, rule or regulation of said local authorities heretofore or hereafter enacted shall have any force or effect, however the provisions of this chapter shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:  *  *  *

"6. Designating any highway as a through highway and requiring that all vehicles stop or yield the right-of-way before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to such intersections. * *"

█ Although not specifically directed, it appears such designation must be by ordinance or regulation duly adopted by local authorities. Section 321.237 provides:

"No *ordinance* or *regulation* enacted under subsections 4, 5, *6* or 8 of section 321.-236 shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected  *  *  *." (Emphasis supplied)

█ It is well settled that official action of local authorities, including boards of supervisors, must be in legal session and they may not act on such ordinances, resolutions, or regulations as individuals, but only as a body where records of the action may be duly preserved. Young v. County of Black Hawk, 66 Iowa 460, 464–465, 23 N.W. 923, 925; Modern Steel Structural Co. v. Van Buren Co., 126 Iowa 606, 617, 102 N.W. 536, 539; Gunn v. Mahaska County, 155 Iowa 527, 536, 136 N.W. 929, 932; Andrew v. Stuart Sav. Bank, 204 Iowa 570, 575, 215 N.W. 807, 808; Mulhall v. Pfannkuch, 206 Iowa 1139, 1143, 221 N.W. 833, 834; Beers v. Lasher, 209 Iowa 1158, 1163, 229 N.W. 821, 823, cited with approval in School District of Soldier Twp. Crawford County v. Moeller, 247 Iowa 239, 243, 73 N.W.2d 43, 45; Emmet County ex rel. Johnston v. Dally, 216 Iowa 166, 168–169, 248 N.W. 366, 367; Greusel v. O'Brien County, 223 Iowa 747, 750–751, 273 N.W. 853, 854–855; Coe v. Board of Sup'rs, 229 Iowa 798, 801, 295 N.W. 151, 153–154; and Morrow v. Harrison County, 245 Iowa 725, 739–740, 64 N.W.2d 52, 61.

█ Since there is nothing to show any formal steps have ever been taken by the board of supervisors to establish "Old Highway 18" as a through highway in Hancock County, we are satisfied it retained the unpreferred status of a local secondary road at the time of this accident.

In Greusel v. O'Brien County, supra, cited by defendants, plaintiff claimed an oral contract between himself and defendant county. The court stated there must be evidence showing authorization, approval or ratification of the contract by the board, *while in session and acting as a board,* before the county can be bound.

In Young v. County of Black Hawk, supra, a verdict was directed against a physician who sought to recover from the county for certain medical services rendered on behalf of the township at the request of several members of the township board of health. The court held inter alia that a board must act *as a unit* and in the manner prescribed. The determination of the members individually is not the determination of the board.

In Modern Steel Structural Co. v. Van Buren Co., supra, 126 Iowa at 617, 102 N. W. at 539, the county claimed damages based on a contractor's breach of a bridge construction contract. The court stated the signing and delivery of the paper to the bridge company by two of the supervisors cannot be said to have been the act of the board. No action was ever approved by the board in session. "That the act of the individual members of a public body, even though concurred in by a majority of its members, is not official or binding upon the municipality which they represent, is too well settled for doubt or debate. (Citations)"

In Gunn v. Mahaska County, supra, plaintiff alleged an agreement with the board of supervisors to collect fines and costs due the county. This court affirmed dismissal of the petition. In doing so, it stated at page 536 of 155 Iowa, at p. 932 of 136 N.W.: "The acceptance of plaintiff's proposition was signed by the members of the board of supervisors individually, * * * [but] nothing relating thereto appears in the proceedings of the board, * * *. In these circumstances it was not to be inferred that the acceptance was by the members acting as a body in session as a board of supervisors rather than individually, * * *."

█ In the absence of any board resolution here David Mueller had the statutory right-of-way. Section 321.319 provides: "Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right-of-way. The foregoing rule is modified at through highways and otherwise as hereinafter stated in this chapter."

Our statutes authorizing local authorities to designate "through" highways by ordinance or resolution recognize necessary certainty in determining which party has the protection of the right-of-way rule. The trial court was correct in apprehending the confusion which would result if a customary right-of-way could compete with a statutory one, especially if one of the parties were not aware of the custom, as appears to be true in the instant case.

Hoover v. Blackmore, Ohio Mun.Ct., 54 Ohio Law Abst. 177, 87 N.E.2d 477, considers similar matter under statutes apparently identical to Iowa's. The issue there was whether the erection of a stop sign by the county engineer without adoption of an authorizing resolution by the county commissioners would deprive a driver who ran the stop sign, which had been knocked down out of sight, of the protection of the statute granting him the right-of-way. The court held that without a board resolution the stop sign did not change the right-of-way rule and the driver who failed to obey the stop sign still had the statutory right-of-way.

Mylnar v. Hall, 55 Wash.2d 739, 350 P.2d 440, involved an intersectional collision where a party urged that a road be classified as a de facto arterial (through) highway so as to avoid the rule requiring that he yield the right-of-way. The court rejected his contention that the road was a de facto arterial highway based on the fact stop signs had been erected at the intersection by the county commissioners but removed later, apparently by vandals. The court stated at page 442 of 350 P.2d: "Van Tassel road was not an 'arterial highway' as that term is defined in RCW 46.04.030, since Pierce county had never passed a formal resolution designating it as such."

It should be noted both the Ohio and Washington cases involved situations where the stop sign was invisible or had been removed. This was also the situation here. We need not pass on the relative duties of the parties where a stop sign is in fact present and visible but not authorized by formal action of the governing authorities. Cf. Hoover v. Blackmore, supra, 87 N.E.2d 477.

■ We conclude determination of the status or character of a local secondary road or highway is generally a question of law for the court, not one of fact for a jury, and evidence as to custom and usage on that issue here was irrelevant and incompetent.

II. Under his third assignment of error, striking Brown's testimony as to his state of mind as he approached the intersection where the collision occurred, plaintiff contends this evidence was admissible as bearing on whether Brown was using due care for his own safety. The court's refusal to permit the jury to consider evidence of custom and usage in recognizing Old Highway 18 as a through highway evidently gave rise to this assertion. It is conceded decedent and his driver, Brown, were engaged in a joint venture and Brown's negligence would be imputable to decedent.

Defendant alleged as the third specification of his affirmative defense decedent was negligent in failing to yield the directional right-of-way contrary to Code section 321.319 and this was a proximate cause of his fatal injuries. This was one of four specifications submitted to the jury.

We consider first plaintiff's contention as directed to this specification.

■ With the exception of violation of section 321.298 requiring vehicles meeting each other to give half the traveled way by turning to the right, which constitutes merely prima facie negligence, violation without legal excuse of other statutes regulating the law of the road is negligence per se or as a matter of law. Kisling v. Thier-

man, 214 Iowa 911, 915–916, 243 N.W. 552, 554; Florke v. Peterson, 245 Iowa 1031, 1034, 65 N.W.2d 372, 373; Cunningham v. Court, 248 Iowa 654, 664, 82 N.W.2d 292, 298; Kohler v. Sheffert, 250 Iowa 899, 905, 96 N.W.2d 911, 915; and Kroblin Refrig. X Press Inc. v. Ledvina, 256 Iowa 229, 234, 127 N.W.2d 133, 136.

■ " * * * [W]here it becomes material to show the mental operation of a person 'or to ascertain the reasons or influences which have induced certain action or conduct on his part, such person may testify directly thereto even though such testimony may partake in some degree of the nature of a conclusion.' [Citing authorities]" Colburn v. Krabill, 232 Iowa 290, 292, 3 N.W.2d 154, 155. See also Halligan v. Lone Tree Fmrs. Exch., 230 Iowa 1277, 1286, 300 N.W. 551, 556; Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 603, 94 N.W.2d 750, 754, 82 A.L.R.2d 465; In re Estate of Allen, 251 Iowa 177, 180, 100 N.W.2d 10, 11; Brown v. Guiter, 256 Iowa 671, 677, 128 N.W.2d 896, 900; In re Estate of Malli, Iowa, 149 N.W.2d 155, 159; 1 Conrad, Modern Trial Evidence, section 145; 2 Wigmore, Evidence, Third Ed., section 581; and 31A C.J.S. Evidence § 178.

The same thought is expressed in 1 Jones on Evidence, Fifth Ed., section 200:

"It is the general rule, applicable in civil and criminal cases alike, and sustained by the great weight of authority, that whenever the motive, intention or belief of a person is in issue, the direct testimony of such person whether he is a party to the suit or not, is relevant to the issue of such motive, intent or belief, notwithstanding that his interest may tend to diminish the credit to be accorded to his testimony."

These principles assume, of course, that intent is material to be investigated.

■ "It remains to be noted that this sort of testimony, or any other whatever, to the fact of a person's intent or motive, is of course receivable only on the assump-

tion that *the intent or motive is a fact permissible to be proved under the substantive law* involved in the case. This assumption conditions the admissibility of all evidence * * * and of this sort in particular. Hence, if for any reason of substantive law the person's intent or motive is not provable at all, it is not provable by such testimony." 2 Wigmore, Evidence, supra, at page 721. Quoting Browne v. Hickie, 68 Iowa 330, 333, 27 N.W. 276, 278, in the body of the text as support.

■ Since violation without legal excuse of section 321.319 is negligence as a matter of law, evidence that Brown believed Old Highway 18 was by custom and usage recognized as a through highway was immaterial and irrelevant. His belief as to what was customary or usual under similar circumstances did not excuse or justify violation of a statutory standard which was negligence per se.

This from American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364, 368–369, supports our position:

" * * * [E]vidence of a custom or practice is not admissible where it is offered for the purpose of excusing or justifying conduct which violates a statutory standard, [Citations] * * * unless violation of the statute is considered to be only prima facie evidence of negligence, [Citations] * * *. Obviously, where violation of a statute is negligence per se, evidence of a custom sanctioning violations of the statute would be irrelevant on the question of the existence of negligence."

This general statement is found in Smith v. Cox, Okl., 301 P.2d 649, 651:

" * * * [I]t is settled law * * * in a majority of * * * states, that, a custom or usage repugnant to the express provisions of a statute is void, and whenever there is conflict between a custom and usage, and a statutory regulation the statutory regulation must control; [Citations] * * *." See also 25 C.J.S. Customs and Usages § 10 b, and 21 Am.Jur.2d, Customs and Usages, section 15.

Florke v. Peterson, supra, 245 Iowa at 1037–1038, 65 N.W.2d at 376, was an action for injuries resulting from an automobile-truck collision which occurred when defendant turned left at an unmarked "T" intersection just as plaintiff was attempting to pass on defendant's left, in violation of statutory ban against passing at or near an intersection.

The opinion contains this supporting statement:

"The fact that courts recognize there may be a 'legal excuse' for statute violation is quite different from permitting the violator to invoke the common law rule of reasonable care or the care which a reasonably prudent man would exercise under like circumstances.

"The Ohio Supreme Court has made the distinction: 'Since the failure to comply with * * * a safety statute constitutes negligence per se, a party guilty * * * cannot excuse himself from compliance by showing that "he did or attempted to do what any reasonably prudent person would have done under * * * similar circumstances." A legal excuse * * * must be something that would make it impossible to comply with the statute * * *.' Bush v. Harvey Transfer Co., 146 Ohio St. 657, 67 N.E.2d 851, 855, 856; Simko v. Miller, 133 Ohio St. 345, 13 N.E.2d 914.

" 'Evidence of due care * * * does not furnish an excuse or justification for the negligence presumed to arise on proof of violation of the ordinance.' Gallichotte v. California Mutual Building & Loan Ass'n, 4 Cal.App.2d 503, 41 P.2d 349, 351."

Plaintiff cites Langner v. Caviness, 238 Iowa 774, 28 N.W.2d 421, 172 A.L.R. 1135, to support her position. Because of the heavy reliance she places on this opinion we consider it in detail.

Plaintiffs truck and that of defendant Caviness, driven by defendant Woolums,

were engaged in hauling crushed rock on a county road-surfacing project. They collided in daylight on a dirt road. Plaintiff's empty truck was going north to the quarry, up a hill about 1100 feet long. The Caviness truck, loaded with rock, was going south down the hill. They collided about 250 feet south of the top of the hill.

The traveled portion of the road in the general vicinity was 20 to 25 feet wide. However, at about the point of collision the west 2½ to 4 feet of the grade had washed out to a depth of about 4 feet. The distance from the east side of the washout to the east shoulder of the road was variously given as from 10 to 19 feet. The collision occurred on plaintiff's (east) side of the road almost opposite the washed out place. Each driver charged the other with excessive speed and failure to yield the right-of-way.

Upon appeal defendants complained that the trial court had stricken from their answer allegations of a custom between truckers pertaining to the right-of-way under such circumstances as shown there. The stricken allegations (slightly paraphrased) were:

"Defendants further state that defendant Woolums, traveling down a hill with a loaded truck, approaching a narrow place in said roadway and about to meet the empty truck driven by plaintiff traveling up the hill, relied upon a well established custom long existing between truckers when working upon public works of the character upon which plaintiff and defendant Woolums were then working, known to plaintiff or by the exercise of reasonable care should have been known, that a driver of an empty truck would yield the right of way to the driver of a loaded truck when about to meet in a narrow or defective place in a highway * * * that plaintiff failed to observe said long established custom to yield to the loaded truck the right of way when approaching said narrow place and contrary thereto drove into said narrow portion of

said roadway at a high rate of speed, attempting to beat said defendant's approaching truck to said narrow place or to pass therein; that said failure to so yield the right of way was negligence which contributed to the collision and the resulting damage sustained by plaintiff."

We quote from the opinion:

"Plaintiff's motion to strike the above allegations, which was sustained, stated they constitute no defense or excuse for failure to exercise the statutory care required of defendants in the operation of their truck. Defendants contend the stricken allegations properly bear on the issue of plaintiff's freedom from contributory negligence. They concede that custom or usage will not justify or excuse a negligent act. * * * *Therefore, no reliance is placed on the stricken allegations as an excuse for Woolums' alleged negligence.*

"* * *

"It is generally held, however, that a custom which conflicts with a statutory provision will not be enforced. Where there is such conflict, the statute must control. [Citations] * * * Accordingly, it is usually held that a custom contrary to statute or ordinance may not be shown to excuse a violation thereof. [Citations] * * *.

"* * * *As stated, defendants do not contend the custom upon which they rely could excuse the negligence charged against Woolums but argue only it may be considered on the issue of plaintiff's freedom from contributory negligence.*

"Plaintiff asserts the pleaded custom may not be shown for any purpose because, it is said, it conflicts with section 321. 298, Code, 1946, 5024.02, Code, 1939, which requires persons in vehicles meeting each other on the public highway to give half the traveled way by turning to the right. A violation of this requirement is prima facie evidence of negligence. [Citing authorities] * * *.

"We think the custom pleaded here cannot be invoked to supersede or nullify the above statute. But it does not follow that such custom cannot be considered in determing whether plaintiff was free from contributory negligence [based upon violation of a common law duty].

" * * *

"If because of his knowledge of the pleaded custom it was apparent to plaintiff that Woolums was nöt' going' to yield half the road, the jury could properly find plaintiff should have stopped his truck, not because of any statute but by reason of his obligation to use due care. [Citations] * * *. The pleaded custom, if plaintiff knew or should have known of it, was relevant and material upon the question whether ordinary care required plaintiff to stop, reduce his speed or take some other precaution to have avoided injury. If defendant violated the statute on meeting vehicles, plaintiff was not thereby excused from exercising ordinary care on his part" (Emphasis supplied).

We believe plaintiff has failed to properly interpret the Langner opinion and to recognize it as not applicable here.

This decedent's driver was charged with violating a statute which made him negligent as a matter of law. In Langner defendants were charged with violating a statute which made them only prima facie negligent. They did not contend evidence of custom or usage was admissible to excuse to justify this violation of the statute but asserted that even though they were prima facie negligent by reason of such violation plaintiff was negligent under common law by reason of his failure to comply with the custom of an empty truck yielding the right-of-way to a loaded one about to meet in a narrow or defective place in a highway. Langner's negligence was in no way based upon a claimed violation of a statute regulating the law of the road.

The decision holds evidence of custom was admissible only as bearing on plaintiff's alleged breach of a common law duty to exercise due care in view of the known custom between truckers as constituting negligence barring his recovery. It is not authority for the proposition urged here that a custom contrary to statute or ordinance, violation of which is negligence as a matter of law, may be shown to excuse or justify violation thereof.

This is a vital distinction between that case and plaintiff's position here. Although evidence of custom was not asserted to be admissible as justifying or excusing violation of a statute which constituted only prima facie evidence of negligence, this language in the opinion actually supports the position we have taken here:

"It is generally held, however, that a custom which conflicts with a statutory provision will not be enforced. * * *. Accordingly, it is usually held that a custom contrary to statutory ordinance may not be shown to excuse a violation thereof.

" * * *

"We think the custom pleaded here cannot be invoked to supersede or nullify the above statute [section 321.298]." loc. cit. 778–779 of 238 Iowa, 423–424 of 28 N.W. 2d.

Here decedent's violation of a statute which is negligence as a matter of law is sought to be excused by showing he was following a custom in failing to yield the statutory right-of-way. The effect of so doing would be to recognize custom and usage as a legal excuse for violation of a statute which is negligence per se.

Plaintiff's contention as directed against specifications of decedent's negligence based on statutory violations cannot be sustained. The court did not err in refusing evidence of custom and usage as irrelevant on those specifications.

III. Admissibility of custom as bearing on decedent's common law duties as to lookout and control remains to be considered.

■ As stated, the court submitted decedent's failure to maintain a proper lookout and his driver's failure to have the vehicle under control as specifications of decedent's negligence. Lookout, of course, is a common law duty. We assume at this point the specification of control was also treated as a common law duty rather than statutory, since what we have said in Division II would dispose of plaintiff's contention as to statutory control.

Langner v. Caviness and American Smelting & Refining Co. v. Wusich, both supra, support the use of custom evidence *when offered for purposes other than* altering the effect of a statute, i. e., as bearing on the common law duty of due care. However, neither of these cases aids plaintiff's position here.

As stated, at the hearing on the motion to suppress evidence prior to trial defendants moved "the Court to suppress any evidence with respect to the showing of custom, usage or intention of the use of said road as a through highway for any purposes or by any means whatsoever." The motion was sustained and plaintiff's counsel gave no indication whatever than that he intended to offer evidence of custom for any other limited purpose.

We set out the record:

"I do want to apprise the Court, as far as plaintiff is concerned, while we think custom and usage is important, we think the real issue here is what the board of supervisors and county engineer actually did in connection with this road. The fact stop signs were constantly in place and that the road was considered by them as a through highway and was held out to the public generally as a through highway, is the nub of our contention here. So while I do feel custom and usage has got something to do with it, I don't want the Court to think that is the most important thing we are going on, we feel the other is stronger."

It is clear reference to "the other" was to what the county board and engineer actually did in conection with this road. Counsel does not contend he indicated in any manner at the hearing on the pretrial motion that he intended to offer evidence of custom for the limited purpose of its bearing on common law lookout and control.

As a witness Brown was asked:

"Q. Mr. Brown, on July 24, 1965, as you approached this intersection where the collision occurred, what was your state of mind? A. Well, I thought I had the right of way."

Defendant's motion to strike the answer on the ground it was given before counsel had a chance to object and an objection to it as wholly immaterial, incompetent and irrelevant was sustained and plaintiff made an offer of proof covering the same matter. Even then plaintiff did not indicate evidence of Brown's state of mind or intent was offered for the limited purpose of its bearing on his obligation to use due care.

We held in Divisions I and II, supra, that evidence of custom was not admissible for the purposes of establishing Old Highway 18 as a through highway or as an excuse or justification for violation of a statute.

■ Error does not lie in the exclusion of evidence claimed on an inadmissible ground even though it might have been admissible had it been claimed on another and different ground. Johnson v. Rockaway Bus Corporation, 145 Conn. 204, 140 A.2d 708, 710. See also Cotney v. State, 248 Ala. 1, 26 So.2d 603, 605, 607; In re Smead's Estate, 219 Cal. 572, 28 P.2d 348, 349; Hairgrove v. City of Jacksonville, 366 Ill. 163, 8 N.E.2d 187, 196; and Hudson v. Smith, Tex.Civ.App., 391 S.W.2d 441, 447. Where the objection has been sustained and the offeror contends that evidence which is inadmissible for the purpose previously indicated by him may be admissible as bearing on other purposes, he has a duty to so state.

"Where the materiality is not apparent, the party offering it must disclose it. In In Re Repp's Estate, 241 Iowa 190, [195], 40 N.W.2d 607, 610, we quote with approval from Votaw & Hartshorn v. Diehl, 62 Iowa 676, [680] 13 N.W. 757, 18 N.W. 305, as follows: 'The true rule, we think, is that, when it is apparent upon the face of the question asked the witness what the evidence sought to be introduced is, and that it is material, this is sufficient. But when this is not apparent, then the party seeking to introduce the evidence is required to state what he expects to prove, and thus make its materiality appear.'" Iowa Power and Light Co. v. Abild Construction Co., Iowa, 144 N.W.2d 303, 313.

Recent decisions of this court supporting this statement, although involving exhibits, are Olson v. Norwegian Mutual Ins. Assn., 258 Iowa 731, 737, 140 N.W.2d 91, 95; Englund v. Younker Brothers, Inc., 259 Iowa 48, 57–58, 142 N.W.2d 530, 535.

The rule is well stated in Roach v. Snedigar, 76 S.D. 63, 72 N.W.2d 427, 429–430:

" 'The general principle is that the offer must be judged *exclusively by its specific contents* regarded as a whole. The principle leads to several consequences: (1) If the evidentiary fact desired to be offered is in itself apparently irrelevant, or otherwise dependent on other facts for its admissibility, the offer must contain a statement of the *specific purpose,* or of all the *other facts necessary* to admissibility.' Wigmore on Evidence, 3d Ed., Vol. 1, § 17(b), p. 319. See also 53 Am.Jur., Trial, § 102, p. 91.

" * * * [I]t was the duty of the appellants to make known to the trial court the limited purpose for which they claimed the excluded testimony admissible. To hold otherwise would be to require the court to cast about for reasons for which the same was offered. That should not be the burden of the court. Rather, when evidence that is apparently inadmissible is offered for a limited purpose, the proponent of the evidence should have the burden of making clear to the court his reason for the offer. The court is entitled to be advised of this fact before ruling on the offer. Further, the opponent would be in no position to make a proper objection unless he knew the limited purpose of the offer, or to request an instruction limiting the use of the evidence, if admitted, to the purpose of its admission." 88 C.J.S. Trial § 82 c contains a similar statement in substance.

Since plaintiff did not indicate in the trial court evidence of custom was being offered as bearing on decedent's obligation to use due care, the court committed no error in disallowing the evidence when its admissibility was challenged.

We recognize evidence may be clearly inadmissible for one purpose yet the same evidence may be proper and admissible for some other legitimate purpose. However, after defendant's objections had been sustained plaintiff never made known to the trial court the legitimate purpose now claimed for its admissibilty.

IV. From what we have said in Division I we must conclude there is no merit in plaintiff's complaint of the court's instruction 7. As a matter of law it appeared this road was not a through highway. In view of the many references to this road as Old Highway 18 during the trial, we think this instruction was justified and was properly given.

Affirmed.

GARFIELD, C. J., and MOORE, STUART and RAWLINGS, JJ., concur.

LARSON, SNELL, BECKER and Le-GRAND, JJ., dissent.

LARSON, Justice (dissenting).

I respectfully dissent.

I agree with the reasoning and conclusion reached by the majority in Division I.

I also agree with the majority's announcement in Division II that, where intent is material, the mental operation of a person which induces his actions or conduct may be shown and such a person may testify as to the reasons or influences which have induced those actions or conduct. Generally, evidence as to custom may be received in motor vehicle accident cases when the state of mind of the driver is material. Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1016, 82 N.W.2d 82, 89; Langner v. Caviness, 238 Iowa 774, 778, 28 N.W.2d 421, 423, 172 A.L.R. 1135, and authorities cited therein; American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364; Alires v. Southern Pacific Co., 93 Ariz. 97, 378 P.2d 913; State v. Watson, 7 Ariz. App. 81, 436 P.2d 175; Mitchell v. Knight, Alaska, 394 P.2d 892.

It is generally held that evidence of a custom which conflicts with a statutory standard, a violation of which is negligence per se, it not relevant and material. *Where there is a conflict,* the statute controls. 55 Am.Jur., Usages and Customs, section 17; 25 C.J.S. Customs and Usage § 10 b; Milroy v. Chicago M. & St. P. Ry. Co., 98 Iowa 188, 197, 67 N.W. 276; 1 Blashfield Cyclopedia of Automobile Law and Practice, Perm.Ed., 458, 460, section 651. Certainly, then, evidence of custom and usage offered *for the purpose* of excusing one's violation of a statutory standard should be rejected. Equally well recognized in such matters is the rule that nonadmissibility of an evidential fact for one purpose does not prevent its admission for any purpose otherwise proper. Alires v. Southern Pacific Co., supra; American Smelting & Refining Co. v. Wusich, supra.

I cannot agree that, because evidence of custom and practice is inadmissible to excuse a statutory violation, it will be inadmissible for all purposes, or that it will not be material or admissible to excuse a nonstatutory charge of negligence in the same proceeding. Nor do I agree that evidence, inadmissible for one purpose, shifts the burden of proving its admissibility for other relevant purposes. To require a litigant to explain to the court the reasons he believes his evidence is material and relevant under such conditions would be a strange rule of evidence indeed.

Only two of the five specifications of negligence alleged in the case at bar would fall within the rule that evidence of mental attitude and belief could be found immaterial.

The defendants' specifications of negligence included failure to keep a proper lookout and failure to have the car under control, neither of which is statutorily defined. The court submitted all five of defendants' specifications, which included the statutory regulations in sections 321.319 and 321.288 relating to failure to yield the directional right of way and failure to reduce speed when approaching and traversing an intersection. The trial court concluded there was sufficient evidence of plaintiff negligence on the issue of lookout and control prior to the accident to submit those issues to the jury. Having done so, appellant contends it committed error in rejecting evidence of Brown's state of mind on these issues as he traversed this highway.

In Division III the majority attempts to justify the failure of the trial court to admit testimony of Brown as to the basis of his mental attitude. Obviously, these are not specifications of decedent's negligence based upon statutory violations, but relate to the common law duty to use due care under the circumstances. Thus, I cannot understand the finding of the majority that the court had *no indication* of why appellant wished to introduce this evidence as to custom. Plaintiff's offer of proof went to that proposition, and no court could reasonably believe it was just another effort to establish the status of Old Highway 18.

Pursuant to a hearing prior to trial, on defendants' motion that the court "suppress any evidence with respect to the showing of custom, usage or intention of the use of said road as a through highway for any purpose

or by any means whatsoever", the court did sustain the motion. In so doing, it said: "The Court's reasoning is that attempting to submit the *issue of a highway and its character* as a through highway to a jury, an impossible and insoluble situation is created. That plaintiff here, traveling on the favored road *so established* by custom and usage, would be entitled to the benefit of the rules of the road and pertaining to such favored highways, and specifically in this case an instruction under Section 321.321 of the Code." (Emphasis added.) It was quite evident from this ruling that the court then understood the issue involved was the availability of evidence of custom and usage *to establish the status of the road,* not as to its use to explain the state of mind of the driver of plaintiff's vehicle as he drove down this highway. Its ruling on the motion should have been so restricted.

Plaintiff's counsel at that time made it quite clear he deemed evidence of custom and usage "is important," but in his effort to establish the highway as a through highway he was relying chiefly on the actions of county officials. The court was well aware of these contentions, and I doubt that it intended to deny the plaintiff the right to introduce evidence of custom and usage for any other purpose in this lawsuit. If it did, I would find reversible error in that ruling.

Later in the trial when the witness Brown was asked, "As you drove down that highway going out of Britt on July 24, 1965, did you think that you were on a through highway?", the court sustained defendants' objection that it was "incompetent, irrelevant and immaterial and not within the province of this witness to be able to answer it", and when asked, "as you approached this intersection where the collision occurred, what was your state of mind?", the court sustained defendants' motion to strike Brown's answer that "Well, I thought I had the right of way", based upon the ground that "the basis that the state of mind of the witness is wholly im-

material, incompetent and irrelevant, statement of opinion, which is not the subject to opinion testimony." These rulings were wrong and, when the court admonished the jury "to give it *no consideration for any purpose* whatever during your deliberations", it committed reversible error. (Emphasis added.)

It cannot be rightly contended the court was not aware of the purpose of this evidence and the reason plaintiff offered evidence of custom and usage at that time. In his offer of proof Brown related his use of this highway as a resident, as a bus driver, and as an observer of that use by other persons in that locality. He testified: "Through the years that I have been using that road. I have considered it a through highway and until a few years before that, it had been the only highway through there. * * * There was no change made in the stop sign situation with respect to roads intersecting old 18 when new 18 came in. I think it probably was common knowledge in the area around Britt and Hancock County * * * on July 24, 1965, that old Highway 18 was a through road. I considered it a through highway. * * * As I approached the intersection where the collision occurred * * * *my state of mind* was that I thought I had the right-of-way." (Emphasis added.)

It is my feeling that the court could not possibly believe this evidence of custom and usage was then being offered to prove the status of the road, that it erroneously refused this evidence and evidence of Brown's state of mind, and that this evidence was not offered for any "limited" purpose. Its purpose was obviously to meet defendants' alleged grounds of negligence, to show plaintiff's driver had used due care under the circumstances, and to show plaintiff's freedom from contributory negligence at that time and place. As bearing on plaintiff's obligation to use due care under these circumstances, it was admissible.

The majority holds, because this evidence might not have been admissible on the

statutory violation issue, the plaintiff has the obligation to show its admissibility on the other specifications of negligence. Although I have no quarrel with the rule that error will not lie in the exclusion of evidence offered to explain or excuse a statutory or per se violation, even though admissible on another *undisclosed* ground, I believe the majority has placed the burden here upon the wrong party. I believe it was defendants' burden to show why this evidence was not admissible under the specifications alleged. As I see it, when the trial court was convinced there was substantial evidence of plaintiff's negligence in addition to statutory violations, it should have permitted evidence of Brown's state of mind and its basis, with proper instructions as to its materiality. Otherwise, these other issues should not have been submitted to the jury.

The majority admits such evidence is admissible as bearing on the common law duty to maintain a proper lookout and control. How can it be said the plaintiff had to do more than call the court's attention to the materiality and relevancy of this evidence under these issues? Clearly, this was done in the case at bar.

The majority cites several cases to sustain its position that the court here was not properly advised as the grounds for admitting this state-of-mind evidence. These cases are *all* premised upon the assumption that the materiality is not apparent. They are not applicable here.

I am abundantly satisfied under this record that the able trial court was or should have been aware of the material purpose of this evidence and should have overruled the defendants' objections thereto. When submitting the statutory specification of failure to yield found in section 321.319, it should have given a cautionary instruction to the effect that any evidence of usage and custom could not be considered to excuse noncompliance with those statute requirements. Dugan v. Fry, 3 Cir., N.J., 34 F.2d 723, 725; Tobin v. Goodwin, 157

Wash. 658, 290 P. 215. Also see Alires v. Southern Pacific Co., supra; Vegodsky v. City of Tucson, 1 Ariz.App. 102, 399 P.2d 723; Wood v. Melton, 179 Kan. 128, 293 P.2d 252; Irwin v. Graham, 62 N.M. 72, 304 P.2d 875; Mrs. Baird's Bakeries, Inc. v. Roberts (Tex.Civ.App.), 360 S.W.2d 850. Also see 77 A.L.R.2d 1327–1343 for an annotation on custom or practice of drivers of motor vehicles as affecting the question of negligence.

Being unable to tell whether the jury here found the defendants were not negligent, or found the plaintiff's decedent and his driver Brown did not use due care under the circumstances, we should reverse the judgment and return the case for a new trial.

SNELL, BECKER and LeGRAND, JJ., join in this dissent.